MYERS *v.* DEPARTMENT OF FINANCIAL INSTITUTIONS ET AL.

[No. 27,076. Filed May 17, 1938.]

*Thomas E. Davidson, Hugh D. Wickens,* and *Hubert E. Wickens,* for appellant.

*Joseph W. Verbarg,* for appellees.

FANSLER, J.—In July, 1933, the Department of Financial Institutions took over the business of the Greensburg Bank for the purpose of liquidating that institution as insolvent under the supervision of the Decatur Circuit Court. An inventory and appraisement of the property of the bank was filed, which included one steel cabinet at $15, 5 steel lockers at $2 each, $10, a vault door and frame at $1,500, 452 lockers at $225, a burglar alarm at $250, and fixtures at $2,000. The appellant, who was the owner of the building in which the bank was operated, and in which the items above referred to were installed, filed a petition with the court asking an order releasing the items in question to him. He alleged that the items were permanently attached and affixed to the building, and that at the time of their installation they were intended to be and form an integral part of the building, and that they were therefore a part of the real estate. There was a trial, and finding and judgment in favor of the appellees as to all of the items in question, except the five steel lockers. Appellant moved to modify the judgment by prohibiting the removal of any of the items in the event their removal would cause a material injury to the building. This motion was overruled. There was a motion for a new trial, which was overruled.

The appellant assigns as error the overruling of both motions referred to. It was alleged in the motion for a new trial that the decision of the court is not sustained by sufficient evidence and that it is contrary to law.

In 1928 the bank in question was operated as the Greensburg National Bank, under a charter from the

federal government. In that year the appellant entered into an agreement with the bank by which he was to furnish money to erect a building suitable for banking business, in consideration of a return of 10 per cent to him of the original cost of construction, the bank to have the privilege of purchasing the building at any time at the original cost price. It was then contemplated that the bank would eventually purchase the building, and the contract was made with that end in view. By the terms of the agreement the bank was to pay for all fixtures which went into the building, including the items here in question. The plans and specifications were prepared, subject to the approval of all the parties. The building was erected during 1929 and 1930, and the officers of the bank supervised the plans and details of construction. The building was designed to conform to the use of the fixtures here involved, and it was the clear intention of the parties that the building was to be especially constructed and peculiarly adapted to the use of a bank, and that the selection, design, and installation of the fixtures were with a view to their use in the building, and it is clear that they were built into and fastened to the building, all as a part of one construction plan. To illustrate: the lock boxes and steel vault door were placed in cement in the building at the time it was constructed; the frame of the vault door was fitted into the structure and built into it; the vault frame was attached to and made a part of the wall of the building; the burglar alarm and its wiring were built into the building, with the exception of minor items thereof; the marble, bronze, and wood fixtures were attached to the building in accordance with the original plans. They were fastened to the floor and to the concrete in the building with supports from the steel structure underneath the floor. The building was designed and constructed for a special purpose. It was intended for use as a bank. It

was built for this particular banking corporation. Under the agreement, the bank did not have the right to occupy the building or not as it chose. It contracted to pay the appellant 10 per cent of the cost of the building per annum until it should purchase and become the owner by reimbursing appellant for the funds which he put into the construction of the building. There was a provision for partial payments, but it was the clear design, intention, and purpose of the parties that the banking corporation should ultimately be the owner of the real estate. These facts clearly disclose an intention that the fixtures were to be a permanent part of the banking house, and, as between the bank and the appellant, there is no right to remove and detach the fixtures.

But it is contended that, even though by agreement of the original parties the items were to be a part of the real estate and irremovable, the appellant is estopped from denying that they are personal property and removable, as against the creditors and depositors of the bank, who are represented by the liquidating agent, because of statements verified by the appellant as president of the bank and submitted to the State Banking Department with a view to procuring a charter as a state bank.

In *Iglehart et al.* v. *Todd et al.* (1932), 203 Ind. 427, 178 N. E. 685, it was held that where accommodation notes, without consideration, were delivered to a bank, and the bank was permitted to list the notes as an asset and create the appearance of genuine assets so as to induce the bank examiner to regard the bank as solvent, and the notes were thereafter included in the published reports of assets of the bank, the makers of the notes were estopped as against the creditors of the bank from denying liability, notwithstanding there was no liability as between the makers and the bank. It is clear that the same rule is applicable here if the facts justify the

estoppel, and that the rights of the creditors are directly involved.

As an incident to the application of the bank for a state charter, the bank was examined by the State Banking Department, and a statement of its assets and liabilities was compiled from its books, which was signed and certified by the appellant as president of the bank. In the statement of assets was an item of $18,084.26 for furniture and fixtures, with a recommendation that the item be depreciated to $12,000. The account was not itemized, and does not disclose the particular furniture and fixtures referred to. It appears that all purchases of furniture, fixtures, and equipment were credited to this account, and it appears to have been depreciated from time to time. The cost of the items of equipment here involved, amounting to approximately $13,000, had been credited to this account. It is contended that if the items are a part of the real estate they were not an asset of the bank, and that the statement, verified by the appellant, was false and calculated to deceive depositors as to the true worth of the bank, and that therefore appellant is estopped from denying that the items are an asset, liable to be sold and liquidated for the benefit of the bank's creditors.

While we have concluded that the items in question were a part of the realty, it does not necessarily follow that they were not an asset of the bank, and that the representation with respect to them was untrue. A solvent bank may purchase a banking house, pay part of the purchase price, and issue its notes or other obligations for the balance of the purchase price. In such a case the person from whom the real estate was purchased would have a vendor's lien for the balance of the purchase price. *Old First National Bank & Trust Co. et al.* v. *Scheuman et al.,* post 652. The bank would list the real estate as an asset to the full

value, and list the balance due on the purchase price as a liability, the effect of which would be to show its equity in the real estate as an asset. In the event of insolvency and lack of a market for the real estate, or depreciating real estate values, it might not be possible to realize upon the equity in the building, but if the original purchase price was fair, and the transaction was free from fraud in its origin, the vendor from whom the building was purchased would not be estopped from asserting his vendor's lien, even though he may have been an officer or director of the bank and had signed the bank's statements. If a bank acquires a long-time lease upon real estate, and erects a banking house or other valuable improvements thereon, it may no doubt carry the reasonable cost of such improvements as an asset, but upon insolvency, especially at a time when values have depreciated, it may be impossible to realize upon the investment, and all, or a part, of the asset may be lost. Still it could not be reasonably contended that the lessor, if he happened to be an officer or director of the bank, would be estopped from asserting his right to reenter the property upon breach of the lease, or estopped from denying the right of creditors to have the building or improvements removed which otherwise would be a part of the real estate.

The contract between the appellant and the bank was in effect a contract to purchase the real estate. It is true that in fixing the price the appellant forgot and neglected to add to the actual money expended for the building the value of the lot upon which it was constructed; and it is also true that the bank itself expended approximately $13,000 for the furniture and fixtures which became a part of the building; but the situation is the same as though the appellant had paid for the furniture and fixtures in the first instance, and the bank had paid a partial payment of $13,000 upon the purchase price,

which it no doubt would have been permitted to carry as an asset. At the time of insolvency the bank had the right to acquire the building by paying the amount due the appellant, and no doubt the liquidating agent, acting for the bank and creditors, still has the right to acquire the real estate by paying the balance due. If the land upon which the building was built and the building, including the furniture, fixtures, and equipment, are now worth what the building, including the furniture, fixtures, and equipment, cost, they can be acquired and resold, and cash made available to the full amount of the inventoried items, and more, for it must be assumed that the lot upon which the building was constructed was worth something. But if the banking house, and lot, and furniture, fixtures, and equipment are not now worth what the building, furniture, fixtures, and equipment cost to construct, it is either because they cost more than they were worth, or there has been a depreciation in values. There is no contention or effort to show that the expenditures in the building and construction were improvident, or that there was negligence in making the expenditures, and it must be concluded that the loss of the asset is due to a depreciation in values, just as partial losses in other assets must be attributable to shrinkage and depreciation in values. In this view of the case there was no misrepresentation which can be made the basis of an estoppel, but a good-faith representation of what was believed to be a then present, existing interest in property which it was intended the bank should ultimately acquire in its entirety.

Judgment reversed, with instructions to sustain appellant's motion for a new trial.

Tremain, J., not participating.