CITIZENS BANK OF GREENFIELD v. MERGENTHALER LINOTYPE CO.

[No. 27,339. Filed February 28, 1940.]

574

*Busby & Davisson,* of Anderson, for appellant.

*John J. Kelly,* of Indianapolis, for appellee.

TREMAIN, J.—The appellee filed this action in replevin to recover possession of two linotype machines. Answer, counterclaim, and set-off were filed by appellant. The pleadings presented the issue as to the ownership of the property. The appellant claimed ownership through a sheriff's deed executed upon a mortgage foreclosure sale. The appellee claimed ownership by virtue of conditional sales contracts wherein it sold the linotypes, one to John F. Mitchell in 1925 and the other to the Wm. Mitchell Printing Company in 1929. The issue before the court was whether the linotypes were personal property or fixtures which were part of the real estate.

Upon request of appellee the court found the facts specially and stated its conclusions of law thereon. Judgment was rendered in favor of appellee, and that it was the owner of the linotypes and entitled to the possession. Appellant excepted to the conclusions of law and filed a motion for a new trial, in which it challenged the correctness of the findings.

The facts as disclosed by the findings of the court and the evidence in the record are in substance as follows:

That in 1925 appellee sold to John F. Mitchell on a written conditional sales contract Model 26 linotype machine for the consideration of $4,775, upon which $750 remained due and unpaid. That in April, 1929, it sold by written conditional sales contract to Wm. Mitchell Printing Company, Model 8 linotype machine, for the consideration of $4,015 and accepted in trade therefor, and as part payment, Model 5 linotype machine, represented by the Wm. Mitchell Printing Company to be unencumbered. The balance due and unpaid on Model 8 was found to be $800. Both machines were installed in the printing plant at the time of purchase. That in 1925, when the first machine was purchased, the printing plant was owned by John F. Mitchell, individually; that before Model 8 was purchased he caused the printing business to be incorporated in the name of the Wm. Mitchell Printing Company, and Model 8 was purchased by the corporation. The plant is located in Greenfield, and consists of four large buildings used exclusively in printing books, papers, and records, and at the time of said purchases was used for no other purposes. The conditional sales contracts by which the machines were purchased stated that they should be deemed to be goods and chattels, and not be affixed to the real estate. That in March and April, 1935, before the commencement of this action, appellee demanded possession of said machines, which demands were refused; that at said times both machines were in the possession of the appellant under claim of ownership; that neither machine had been taken for taxes, etc.; that the fair market value of Model 26 was $1,400 and Model 8 was $1,100.

That in October, 1928, John F. Mitchell and wife executed to appellant a mortgage on said real estate, buildings, and personal property located therein, includ-

ing Model 5 linotype machine and said Model 26, which mortgage was duly recorded. This mortgage was found to be a renewal of a mortgage executed by said Mitchell to the appellant in 1901. The original mortgage was given to secure funds with which to enlarge the printing plant. The printing company was incorporated in 1929, at which time John F. Mitchell conveyed all of the property to Wm. Mitchell Printing Company. In January, 1933, appellant instituted a foreclosure proceeding in the Hancock Circuit Court on the October, 1928, mortgage and made John F. Mitchell and wife and Wm. Mitchell Printing Company parties defendant. The appellee was not made a party to that action. In October, 1933, the court appointed a receiver to take charge of the property pending the litigation and during the year of redemption. The court rendered a personal judgment against John F. Mitchell in January, 1934, for the sum of $56,073, and decreed a foreclosure of the mortgage and sale of the property. The appellant bid in the property at the sheriff's sale for the sum of $45,000 and receipted the judgment for that amount. In April, 1935, the sheriff executed a deed to the appellant, including therein by specific description not only the real estate but Models 5 and 26 linotypes; also, Model 8, which was not described in the mortgage and was purchased after the mortgage had been executed.

At the time of the commencement of appellee's replevin action said Model 5 was not in existence. When it was accepted by appellee from Wm. Mitchell Printing Company as a thousand dollar payment on Model 8, it was shipped to Brooklyn, New York, and scrapped, and had a market value of $25 as junk. Appellee had no actual knowledge or notice of the 1928 mortgage.

Both Models 26 and 8 were placed in the printing plant in Greenfield upon a concrete floor and remained in place by their own weight, each weighing one and one-half tons. They were not fastened to the floor and could be removed without damage to the realty. The court found that both machines were unlawfully detained by appellant and concluded that appellee was entitled to recover their possession, together with $100 damages for the unlawful detention of each; that appellant take nothing by its cross-complaint and counterclaim, except it was entitled to recover the sum of $25 from appellee for the conversion of said Model 5. Judgment was rendered accordingly.

The printing business was established by an ancestor of the present Mitchell about fifty years before this action was filed. When the mortgage was executed to the appellant in 1901 it secured the payment of two notes totaling a little more than $12,000. One note was due in one year and the other was due in two years after date. The record discloses that loans were made by the appellant to the Mitchells from time to time, evidenced by notes, until 1928 when they aggregated approximately $50,000. At that time new notes were given, secured by the mortgage upon which foreclosure was had. This mortgage described the real estate and specific machinery, equipment, fixtures, and personal property. It excluded stock in trade and office supplies enumerated therein. Among the conditions stipulated in the mortgage are the following:

"The mortgagors agree to keep and maintain all of said machinery and personal property in good condition . . . and they further agree that the machinery and personal property shall not be removed from the real estate herein described.

"The machinery, equipment, fixtures and personal property herewith mortgaged is now located

in the buildings, situated on the real estate herein described. . . .

"It is further agreed that until said debt is fully paid, mortgagor John F. Mitchell, . . . will keep the buildings on said premises, or to be erected thereon and the personal property herein mortgaged, insured in some solvent fire insurance company authorized to do business in the State of Indiana for the sum of forty thousand dollars . . . ."

The mortgage was duly recorded by appellant in both the real estate and chattel mortgage records of Hancock County where the property was located, the mortgagor and mortgagee resided, the foreclosure suit was filed, and the trial was had. At the time of trial the president of the bank testified that he did not have notice of the conditional sales contracts under which appellee claimed title to the linotypes. Neither the cashier of the bank nor any other officer or agent was called as a witness to testify as to his lack of knowledge of the existence of the appellee's claims to Models 8 and 26.

The building in which the linotypes were located housed five of these machines, including Models 8 and 26, to which water pipes and electric wires were connected. Each linotype operated independently. If one should become out of condition it could be repaired without in any manner affecting the operation of the others. The linotypes in question could be disconnected and removed from the room in a few minutes without damage to the building and without interrupting the functions of the printing plant. The floor of the room was constructed of heavy concrete sufficient to prevent vibration of the machines when in operation. Upon these facts the court concluded that Models 8 and 26 retained their personal property characteristics and did not become fixtures when installed in the plant.

The test to be applied in determining whether an article used in connection with realty is to be considered as personal property or a fixture is difficult to define by a general rule, dependent always upon the particular facts presented in each case. The test adopted in this state is one generally accepted by courts. It is stated in *Ochs* v. *Tilton* (1914), 181 Ind. 81, 85, 103 N. E. 837, as follows:

"A general rule, recognized by the weight of authority, is that the true test of a fixture requires the united application of the following requisites: (1) annexation of the article, which may be either actual or constructive; (2) adaptation to the use of the realty, or part thereof, with which the article is connected; (3) the party annexing must have intended thereby to make the article a permanent accession to the freehold."

This test is cited and quoted in *J. H. Day Co.* v. *Public Savings Ins. Co.* (1926), 85 Ind. App. 78, 151 N. E. 361, relied upon by appellant as chief authority for a reversal of this cause.

All the authorities agree that as between the vendor and vendee of the personalty, it may be agreed that it shall retain its personal character even though affixed to the real estate in such manner as not to be removed without material injury to the realty. This rule is binding only upon the parties and their privies. It does not affect the rights of an innocent purchaser without knowledge, where the chattel has been annexed to the realty in such manner as to indicate a permanent attachment.

Reverting to the test quoted above, the courts generally agree that the first element of the test—the annexation to the realty, actual or constructive—is most uncertain and unsatisfactory. The tendency is to accord to it less and less significance.

The second element of the test is entitled to much weight when considered in connection with the element of intention. The tendency is to regard everything as a fixture which has been attached to realty to promote the purpose for which the realty is held, regardless of the character of the attachment. If the property is placed upon the realty to improve it and make it more valuable, generally it is deemed a fixture; but if it is attached for a use that does not enhance the value of the land and may be removed at the pleasure of the one who attaches it, it remains a chattel. The third test which concerns the intention to make or not make an article a permanent accession of the freehold is of controlling importance. The first two tests derive their chief value as evidence of such intention. The third test is made the controlling criterion by the great weight of authority, and is considered the chief test. For a chattel to be converted into a fixture the intention to make it a permanent accession must affirmatively appear. If there is any doubt of such intention, the chattel does not lose its personal property characteristics. The intention that the article shall remain personalty will be determined from the conduct, action, purpose, and relation of the parties. The intention of the parties is not always governed by what is said by them, but the intention may be determined from the nature of the article, relation and situation of the parties making the annexation, and the structure, use, and mode of annexation. 22 Am. Jur. 715-743, Fixtures §§ 3-31.

The apparent conflict among the authorities arises from the application of the test to the particular facts in each case. There are many cases where it is evident that an article of personal property remains a chattel, and in other cases where the

article becomes a fixture. Again, there are many border-line cases requiring great care in determining the nature of the property attached to real estate. The intention of the parties must be kept in mind. An examination of the decisions of this and the Appellate Court will reveal a clear distinction relative to the facts involved in each case. *J. H. Day Co.* v. *Public Savings Ins. Co., supra,* is correctly decided upon the facts there present. That decision involved the installation of machinery, ovens, and equipment in a bakery, which were installed as a permanent part of the baking plant and with no other intention. It was found that the ovens and machinery were suitable for no other purpose and were installed with the purpose and intention of becoming a part of the real estate. Under such circumstances the court correctly held that the property lost its personal characteristics. In *Ochs* v. *Tilton, supra,* where the test rule is discussed, emphasis is laid upon the intention of the parties.

In *Menzenberger* v. *American State Bank, Inc.* (1936), 101 Ind. App. 600, 198 N. E. 819, the test laid down by other authorities is repeated and applied to the facts therein involved. The question arose on a claim between one holding a mechanics lien and the owner of the realty concerning fixtures installed in a home. Certain iron grill work and curtain poles and rods installed by the mechanics were held under the facts there presented to be intended to become a part of the real estate, while certain other articles of personal property were held to retain their personal property characteristics. The discussion of the question emphasized the intention of the parties relative to the use and character of the fixtures installed.

The question of the intention of the parties is further discussed and emphasized in *Myers* v. *Dept. of Finan-*

*cial Institutions* (1938), 214 Ind. 162, 14 N. E. (2d) 914. The character of personal property is determined by the intention of the parties existing at the time the personal property is annexed to the realty.

A carefully considered case involving the rights of the holder of a chattel mortgage upon certain sawmill machinery attached to real estate is decided in *Binkley* v. *Forkner* (1889), 117 Ind. 176, 19 N. E. 753, in which it is held that the nature of the articles, manner of and connection to the realty, and the intention of the parties are controlling factors in determining whether an article may or may not become a fixture. The facts there involved seem to be more analogous to the facts in the case at bar than any other decision by this or the Appellate Court.

In determining the character of the linotype machines it must be kept in mind that the chief and principal test is the intention of the parties. Each of the decisions to which attention has been directed recognizes that the annexation and adaptability of the chattel to the realty are subordinate to the intention of the parties.

It may be profitable to give some attention to a few decisions from other courts. Many of the decisions involve questions of the rights of a vendor of machinery upon a conditional sales contract and the rights of the holder of either a prior or subsequent mortgage. Model 26 was purchased in 1925, prior to the 1928 mortgage, and Model 8 was purchased subsequent to that mortgage. In *Houlton Sav. Bank* v. *American Laundry Machinery Co.* (1934), D. C., 9 F. Supp. 112, the question of the title to laundry machinery held by a vendor under a conditional sales contract as against a subsequent mortgage is discussed. The machinery was placed on a concrete floor in the basement of a

hotel and was connected with other machinery by steam and electrical connections, and with hot and cold water pipes, each of which could be removed without necessitating injury to the building. It was held that the machinery did not lose its personal property characteristics, and did not become a part of the realty by reason of its connection and use, and the intention with which it was installed is the important if not the controlling factor. See *Lawyers' Mortgage Investment Corporation* v. *Paramount Laundries, Inc.* (1932), 279 Mass. 314, 181 N. E. 262. For a collection and an analysis of a great many decisions pertaining to the question of fixtures see Annotation, 111 A. L. R. 362.

One of the tests applied in determining the character of the property attached is whether or not it may be removed without "material injury to the premises." It has been held that this term means physical damage and not merely a deprivation of the chattels that may be useful or advantageous in carrying on the enterprise. *Franklin Savings Bank* v. *Garot* (1934), 69 F. (2d) 487. In other words, material injury to the premises means more than the mere value of the chattel. To remove it must in some manner affect the value of the premises. It must disorganize and disable the plant of which it is a part. Much has been written upon the subject of what is known as the "institution doctrine." If a chattel is so attached and is so necessary and useful that its removal would prevent the operation of the plant, then it is held to be a fixture as an integral part of the plant; but if it can be removed and the plant continue to operate under circumstances presented by the facts in the case at bar, the property is regarded ordinarily as personalty.

An instructive decision is found in *People's Savings & T. Co., Tr.* v. *Munsert* (1933), 212 Wis. 449, 249 N. W. 527, 88 A. L. R. 1306. This case involved a decision of the rights of the vendor of personalty upon a conditional sale. The general rule is recognized concerning the law of fixtures, physical annexation, adaptability to the use and purpose to which the realty is devoted; and it is held that the intention of the parties is of vital concern. This decision further discusses the question of injury to the real estate by a removal of a fixture. It is held that the construction to be given to the words "without material injury to the freehold" determines the controversy there presented. The chattel adapted to the use of the realty when removed causes some loss. The removal is not the injury to the freehold which the courts have in mind. That court said:

" . . . but in our opinion this is not the sense in which such words were used. If that were the meaning to be given them, a seller of an article which is to be affixed to the realty under a conditional sales contract would run considerable risk in selling even a gas range to a householder, a windmill to a farmer, or any machine of substantial importance to a manufacturing plant under such a contract because the severance of a gas range from a house, a windmill from a farm, or an important machine from a factory might be found to result in material injury to the freehold as of the time of severance. We think the language should not be so construed."

The court found in the case at bar that it was not the intention of the parties to make the linotypes a permanent accession to the realty. The facts and circumstances, including the nature of the linotypes, refute the idea of permanent accession. They were easily and readily removable without injury to the freehold, and when removed the printing plant was undisturbed

in its operation. The integral operated effectively and without hindrance. The linotypes were not an integral part of the plant, the removal of which prevented the other machinery and the plant as a whole from functioning properly.

The facts disclosed are not such as warrant the conclusion that the appellant did not have notice of the title of the appellee to the lintoypes. While the president of the appellant bank testified that he did not know of the conditional sales contracts, the appellant failed to call the cashier or any other officer of the bank to establish lack of notice. In addition to this, the mortgage foreclosed by appellant, and upon which a sheriff's deed was executed, discloses that the appellant had knowledge of the chattel characteristics of the chattels located upon the real estate. The recitals in the mortgage disclose this fact. To be added to this is the fact that appellant recorded the mortgage in the chattel as well as the real estate mortgage record. The court having these facts before it concluded that the linotypes never lost their chattel characteristics.

It is argued that the 1928 mortgage was a renewal of one executed in 1901 which was in existence and on record at the time of the execution of the new mortgage, and that it was notice to appellee of appellant's lien on the real estate. The General Assembly in this state in 1909 enacted a law, §§ 2-616 and 2-617, Burns' 1933, §§ 61-1, 61-2, Baldwin's 1934, which provides that mortgages cease to be a lien after a period of twenty years unless they disclose upon their face that they are to run for a longer period. The 1901 mortgage as disclosed upon its face ceased to be a lien in 1923. So, at the time Model 26 was purchased in 1925 and placed upon the premises, there was no mortgage lien existing against the real estate,

and the 1901 mortgage, though unreleased by the mortgagee, did not constitute notice of the existence of a lien.

The nature of the linotype machines, the evident knowledge of the mortgagee, and the character of its attachment, its use, and the title by which it was held were questions submitted to the trial court, and justify its conclusion.

Judgment is affirmed.

Note—Reported in 25 N. E. (2d) 444.