**In the Matter of Gaylord Duane MILLER, Shirley Mae Miller, d/b/a Miller's Grocery and Locker, Debtors.**

**Bankruptcy No. 85–10500.**

United States Bankruptcy Court,
N.D. Indiana,
Fort Wayne Division.

July 29, 1986.

---

Roland W. Gariepy, Fort Wayne, Ind., for debtors.

Denver C. Jordan, Fort Wayne, Ind., for movant.

## ORDER

ROBERT K. RODIBAUGH, Chief Judge.

Gaylord Duane Miller and Shirley Mae Miller (Millers) borrowed $76,500 from Associates Financial Services of Indiana, Inc., (Associates) in the fall of 1983 to use in their business enterprises. Associates took a non-purchase money first real estate mortgage as security for the loan; Associates did not take a Uniform Commercial Code security interest in any inventory, equipment or other personal property. The issue before the court is whether the mortgage lien extends to a walk-in cooler the Millers had set up in the garage of their Tunker, Indiana, store. The court conducted an evidentiary hearing and heard oral argument on this issue before taking it under advisement on April 8, 1986.

Gaylord Miller has been a professional meat cutter for many years. He and his wife, Shirley, operated "Miller's Grocery and Locker" in Tunker, Indiana, for ten years before they expanded to a second location in Auburn, Indiana. The Auburn store was substantially destroyed by a fire after they obtained the loan from Associates. That loss led to the initiation of this bankruptcy case.

The Tunker facility was a traditional combination residence and store, similar to those found in many communities too small to support larger businesses. Mr. Miller is an ambitious man with a goal of someday owning several combination grocery and meat locker stores. He had an opportunity to, and did, buy a portable walk-in cooler which he planned to use when he was able to expand into an additional location.

Most meat cutting operations are not equipped to handle game animals. The health regulations require that deer and other wild animals be kept separate from domestic animals. The expense of a separate walk-in cooler could not normally be justified, but since he had the cooler available, Mr. Miller decided to set it up in the garage of the Tunker store. He hoped that by providing the highly specialized service of processing game animals he would draw business in from a wider area and increase the success of his enterprise.

The portable unit, unlike the permanent unit in the Tunker store, consists of several modular panels which fit together to form the walls. The assembled unit is held together under tension from several steel rods. The framework which supports the hanging meat is supported by steel pipes and by brackets which are attached to the frame of the garage. The compressor and coils are located next to the cooler itself. Mr. Miller built a screen of metal roofing material which hides the open area above the cooler from view. The entire unit, although quite substantial, could be disassembled and removed from the building through the existing doorways by Mr. Miller and one assistant in less than a day. The removal of the walk-in cooler in question would not disable the structure from its adaptive use as a grocery and meat locker due to the presence of a permanent walk-in cooler in another part of the building. The extra cooler is essential only for processing game animals which are not normally handled by a commercial meat cutter.

■ A real estate mortgage is effective to perfect a security interest in fixtures.

An article loses its status as simple unrelated personalty and becomes a fixture when it has become so integrated into the efficient use of a particular parcel of real estate that it has become logically considered more a part of the real estate than not. Such articles are considered part of the real estate due to the dead weight social loss which would be caused by their removal. Whether any particular article has become a fixture is a mixed question of fact and law which cannot be determined in a vacuum; the court must have the facts before it. The common law has traditionally required the satisfaction of three elements before the transition from personalty to realty is recognized as complete:

(1) constructive or actual annexation of the article;

(2) adaptation of the article to the use of the realty; and

(3) the intent of the annexing party that the article become a permanent accession to the freehold. *Citizens Bank of Greenfield v. Mergenthaler Linotype Co.* (1940), 216 Ind. 573, 25 N.E.2d 444.

## ANNEXATION

■ The portable cooler in question could be considered actually annexed to the real estate. The brackets which support the hanging meat are suspended from the framework of the garage. Whether or not an article is physically attached to the real estate is not very probative. Actual physical annexation is neither a necessary nor a sufficient condition for a fixture. The Indiana Supreme Court in *Citizens* noted that this element was an uncertain and unsatisfactory test. Many cases mention the annexation requirement, but modern cases uniformly discount its importance. *Premonstratensian Fathers v. Badger Mutual Insurance Co.*, (1970), 46 Wis.2d 362, 175 N.W.2d 237. The same walk-in cooler, even where nailed to the building, could be removable personal property, *Andrews v. Williams*, 115 Colo. 478, 173 P.2d 882 (1946) or not, *B. Kreisman & Co. v. First Arlington National Bank of Arlington Heights*, 91 Ill.App.3d 847, 47 Ill.Dec.

757, 415 N.E.2d 1070 (1980) depending on the fee owner's intent. Absolutely portable articles, such as residential door keys, may be constructively annexed to a parcel of real estate. A stand-alone electric refrigerator or any other apparently portable article can become a part of the real estate if it is integrated into the efficient use of the real estate with the intention of permanently improving it. *Peed v. Bennett*, (1944) 114 Ind.App. 412, 52 N.E.2d 629. Annexation is more accurately described as the conclusion which results from the combination of successful integration with the requisite intent rather than as a distinct element. When a party successfully integrates an article into the efficient use of a parcel of real property intending to permanently improve it, the article becomes an annexation or a fixture to the realty.

## INTEGRATION

The walk-in cooler in question has not been integrated into the ordinary use of the realty. The permanent cooler is entirely adequate, and all that is required, to handle any ordinary commercial meat cutting. The portable cooler is only required for processing game animals, which are incidental, and in fact unusual to the operation of a meat locker. If the portable cooler were removed the facility would no longer be equipped to process game animals but, under the institution doctrine, its removal would not prevent the operation of the plant.

The *Citizens* court characterized this test as whether the article could be removed without material injury to the premises. Material injury may refer to direct physical damage to the premises or to indirect harm resulting from its removal. If the removal of the article could disorganize and disable the plant of which it was a part, then it would be considered successfully integrated into the efficient use of the real estate. *Citizens Bank v. Mergenthaler Linotype Co.*, 216 Ind. 573, 25 N.E.2d 444, 449. The court found that the removal of any particular linotype machine did not disable the printing plant; none of the machines were

essential component parts of the plant itself. The removal of the free-standing electric refrigerator in *Peed* would, however, disable the apartment from the ordinary rental market. A refrigerator has, in the collective expectations of the public, become an essential component part of most modern rental housing.

### INTENTION

The intention of the integrating parties is the most important element. This intention must be apparent and is determined from their conduct, action, purpose and from the relationship between the disputing parties. Normally, an owner of real estate intends every improvement he makes to become a permanent accession to his freehold. The law therefore recognizes a strong inference that such improvements are intended to be permanent. A contrary inference arises upon an improvement by a tenant. *New Castle Theater Co. v. Ward* (1914), 57 Ind. App. 473, 104 N.E. 526. While some cases have found the relationship of the parties conclusive on the issue of intent, the more modern and better reasoned opinions recognize that the issue of intent raises a question of fact which can only be determined from the evidence. *Pease & Elliman Realty Trust v. Gains*, 160 Ga.App. 125, 286 S.E.2d 448 (1981).

The evidence makes it clear that the Millers had no intent for the portable walk-in cooler to remain in Tunker, Indiana, for any extended period of time. The cooler was set up in a temporary fashion in their garage. They were actively attempting to expand into a third location when they were set back by the fire in their Auburn store. The permanent improvement inference was adequately rebutted in the case at bar. The explanation for the temporary installation of the cooler and Mr. Miller's plans to expand his business are quite credible. The cost of owning and maintaining a walk-in cooler is high enough that a prudent business person could not justify one based solely upon the wild game market. This treatment of the cooler is also consistent with Associates' appraisal and the Millers' financial statement which represented that a significant portion of the business value was represented by the equipment. The court is satisfied that the installation was intended to be temporary.

Associates has presented a fair amount of self-serving testimony to the effect the loan officer thought that the cooler was a fixture. The appraisal Associates relied on distinguished between the real estate, which was valued at $73,000, and "all the fixtures and freezers, etc." which were valued collectively at $13,000. The simple answer to Associates' argument that they thought they had a lien is that if they wished to take a security interest in "freezers, etc.," which the appraisal distinguished from the fixtures, then they could have asked for it. The loan officer's intention to take a lien is not probative in determining the intent of the Millers, the fee owners when the cooler was installed.

Wherefore, the court finds that the walk-in cooler located in the garage of the property subject to Associates' mortgage lien could be considered to be physically annexed to the real estate but was not integrated into the use of the real estate with the intention of permanently improving it. The cooler has therefore not lost its status as personal property.

SO ORDERED.