

**FILED**

Aug 03 2017, 5:59 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANT | ATTORNEY FOR APPELLEE |
|---|---|
| Mark J. Crandley | James G. Pittman |
| Barnes & Thornburg, LLP | Pittman Emery & Nikirk |
| Indianapolis, Indiana | Bedford, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| 11438 Highway 50, LLC, successor in interest to Regions Bank, successor by merger to Union Planters Bank, N.A., successor in interest to NBD Bank, N.A., | August 3, 2017 |
| *Appellant-Intervenor,* | Court of Appeals Case No. 47A01-1702-PL-354 |
| | Appeal from the Lawrence Circuit Court |
| v. | The Honorable Andrea K. McCord, Judge |
| Timothy John Luttrell, | Trial Court Cause No. 47C01-1609-PL-1101 |
| *Appellee-Plaintiff.* | |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Intervenor, 11438 Highway 50, LLC, successor in interest to Regions Bank, successor by merger to Union Planters Bank, N.A., successor in interest to NBD Bank, N.A. (the Lender), appeals the trial court's Default Decree and Order on Plaintiff's Motion to Award Surplus Property in favor of Appellee-Plaintiff, Timothy J. Luttrell (Luttrell).

We affirm.

# ISSUE

The Lender raises three issues on appeal, which we consolidate and restate as the following single issue: Whether the trial court erred in determining that certain pieces of equipment were not fixtures subject to the Lender's mortgage liens.

# FACTS AND PROCEDURAL HISTORY

In 2005, Luttrell was employed as a superintendent at Indiana Stone Works, Inc. (ISW), located at 11438 Highway 50 West, Bedford, Lawrence County, Indiana. At the time, ISW was owned by Luttrell's brother-in-law, Don Short (Short).[1] Near the end of 2005, Luttrell personally purchased a fifty-ton industrial crane with auxiliary hoist from a former co-worker for $8,000.00.

---

[1] Short was a named defendant in this case, but he failed to appear before the trial court, and he does not participate in this appeal.

The crane was intended to be used in limestone sawing operations, so Luttrell approached Short and suggested that they partner in a new venture aside from ISW. Short agreed, and on November 1, 2005, Luttrell and Short orally formed a partnership: J&D Sawing. On November 8, 2005, J&D Sawing opened a bank account, and on November 16, 2005, the Internal Revenue Service issued an employer identification number to J&D Sawing. Using funds from his wife's retirement account, Luttrell contributed $45,000 to the partnership, and Short added $30,000 to the partnership's funds. These contributions were intended as loans, with the proceeds from J&D Sawing to be first used towards repayment thereof. In 2006, using either partnership funds or his personal money, Short purchased a hydraulic narrow-belt saw on behalf of J&D Sawing for the purpose of cutting slabs of limestone.

[5] At the back edge of ISW's property, Luttrell and Short constructed a new building for J&D Sawing's crane and saw. The crane and the saw required electricity and water to operate, so separate utilities were established for this building. Once the equipment was assembled, the crane and saw were used daily. However, Luttrell stated that he never received any payments in connection with J&D Sawing, and Short handled all finances associated with the partnership. For tax years 2006 through 2012, J&D Sawing filed tax returns reporting only loss of income in the form of depreciating assets. According to the partnership's accountant, it was intended that ISW operate J&D Sawing's equipment for limestone fabrication and pay an equipment rental fee to J&D Sawing. However, Luttrell indicated that J&D Sawing's operations were

entirely separate from ISW's business. Luttrell had hoped to eventually purchase the newly-constructed building and piece of real property from ISW, but the partners "never really got around to discussing [it] because [the business] never really got off the ground good." (Tr. p. 22).

[6] On September 21, 2016, Luttrell filed a Complaint against Short and ISW, seeking, in part, to dissolve the J&D Sawing partnership.[2] Short and ISW never filed a responsive pleading or otherwise appeared before the court. Thus, on November 9, 2016, Luttrell filed a Motion for Default Decree and Affidavit of Damages, requesting a judgment in the amount of $291,500 plus attorney fees and court costs. Luttrell also filed a Motion to Award Surplus Partnership Property to Plaintiff—*i.e.*, Luttrell sought possession of the crane and the saw.

[7] At some point, the Lender, who held the mortgages associated with ISW, foreclosed on the ISW property. On November 23, 2016, the Lender filed a Motion to Intervene in Luttrell's case against Short and ISW and filed an objection to Luttrell's motion for default judgment. According to the parties, the Lender claimed to have a first-priority security interest in the crane and the saw by virtue of its mortgage liens. A Uniform Commercial Code financing statement initially filed in 2008 indicated that the Lender had an interest, in relevant part, in "ALL EQUIPMENT, FIXTURES, INVENTORY AND OTHER TANGIBLE PROPERTY OF [ISW], AND ANY AND ALL

---

[2] Neither the Complaint nor any of the other motions have been included in the appellate record.

ACCESSIONS AND ADDITIONS THERETO, ANY SUBSTITUTIONS AND REPLACEMENTS THEREFORE, AND ALL ATTACHMENTS AND IMPROVEMENTS PLACED UPON OR USED IN CONNECTION THEREWITH, OR ANY PART THEREOF." (Appellant's Exh. C).[3] On November 30, 2016, the trial court authorized the Lender's intervention in the case.

[8] On December 7, 2016, the trial court conducted a hearing on Luttrell's motions. After hearing evidence, the trial court took the matter under advisement. On February 9, 2017, the trial court issued a Default Decree and Order on Plaintiff's Motion to Award Surplus Property. The trial court dissolved the J&D Sawing partnership and, by default, ordered Short and ISW to pay Luttrell's requested damages in full. The trial court further awarded the partnership assets—namely, the crane and the saw—to Luttrell over the Lender's objection. The trial court found that the crane and the saw were personal property of J&D Sawing and were not fixtures subject to any security interest the Lender had against ISW's property.

[9] The Lender now appeals. Additional facts will be provided as necessary.

---

[3] In its appellate brief, the Lender includes certain details about the foreclosure cases, the mortgages, and its security interests that are nowhere to be found in the record. Facts and arguments must be supported with citations to the Record on Appeal, and our court will not consider matters extraneous thereto. Ind. Appellate Rule 46(A)(5)-(6),(8).

# DISCUSSION AND DECISION

## I. *Standard of Review*

On appeal following a decision from the bench, our court does not set aside a judgment unless it is clearly erroneous. *Dinsmore v. Lake Elec. Co.*, 719 N.E.2d 1282, 1285 (Ind. Ct. App. 1999) (citing Ind. Trial Rule 52(A)). Moreover, in this case, the trial court issued findings of fact and conclusions thereon. Thus, pursuant to Indiana Trial Rule 52(A), our court will not set aside these findings or the judgment unless clearly erroneous—that is, if "there is no evidence supporting the findings or the findings fail to support the judgment" or if "the trial court applies the wrong legal standard to properly found facts." *Piles v. Gosman*, 851 N.E.2d 1009, 1012 (Ind. Ct. App. 2006). Conclusions of law are reviewed *de novo*. *Id.* "To determine whether a judgment is clearly erroneous, we give deference to the trial court's decision by considering only the evidence favorable to the judgment and all reasonable inferences flowing therefrom, and we will not reweigh the evidence or assess the credibility of witnesses." *Dinsmore*, 719 N.E.2d at 1285. We will find a judgment to be clearly erroneous if "a review of the record leaves us with a firm conviction that a mistake has been made." *Id.*

## II. *Fixtures*

The Lender claims that the crane and the saw are subject to its security interests because they are fixtures that "are necessary and integral parts of [ISW's] real property." (Appellant's Br. p. 15). Our court has previously determined that "[a] piece of equipment is typically thought of as personal property." *Dinsmore*,

719 N.E.2d at 1286. However, "[a] 'fixture' is a former chattel or piece of personal property that 'has become a part of real estate by reason of attachment thereto.'" *Gill v. Evansville Sheet Metal Works, Inc.*, 970 N.E.2d 633, 641 (Ind. 2012) (quoting *Ochs v. Tilton*, 103 N.E. 837, 838 (Ind. 1914)). "Generally, under the law of fixtures, the question as to whether any particular thing which has been attached to land has become part of such land or whether such property remains personal property is a mixed question of law and fact and depends on the particular circumstances of each case." *State ex rel. Green v. Gibson Circuit Court*, 206 N.E.2d 135, 138 (Ind. 1965).

[12] In determining "whether a particular article has become so identified with real property as to become a fixture," Indiana courts utilize a three-part test. *Dinsmore*, 719 N.E.2d at 1286. This test considers: "1) actual or constructive annexation of the article to the realty, 2) adaptation to the use or purpose of that part of the realty with which it is connected, and 3) the intention of the party making the annexation to make the article a permanent accession to the freehold." *Id.* The third part of the test—the intent—is controlling. *Id.* at 1287. "Intention may be determined by the 'nature of the article, relation and situation of the parties making the annexation, and the structure, use, and mode of annexation.'" *Id.* at 1286 (quoting *Citizens Bank of Greenfield v. Mergenthaler Linotype Co.*, 25 N.E.2d 444, 448 (Ind. 1940)). "If there is doubt as to intent, the property should be regarded as personal." *Id.* at 1287.

[13] In the present case, the undisputed evidence establishes that the equipment, purchased by the partners for J&D Sawing, was annexed to ISW's property and

assembled in a building constructed specifically to accommodate the crane and the saw. The saw is a fourteen foot by seven foot, three-inch industrial hydraulic narrow-belt block saw. It is placed on top of rails, which are bolted to the floor, and it functions by moving up and down the track to cut stationary blocks of limestone. The saw has an electrical cord and water hose that connect to the building's utilities. The saw can be disassembled, usually in "no more than two (2) days," and transferred by a semi-truck to a new location. (Tr. p. 35). Similarly, the crane—a fifty-ton piece of equipment—is situated atop legs and rails, which Luttrell purchased in conjunction with the crane and which are anchored to the floor. The crane "runs up and down the rail just like a train would on rails" to hoist the blocks of limestone in to place. (Tr. p. 30). The crane is "tied in [to the building] with three (3) wires that suppl[y] the electricity to it and that's it." (Tr. p. 30). Luttrell explained that it is common for such cranes to be bought and sold and transferred to various mills and stone-cutting operations. A 100-ton crane would be required to lift the crane off its rails and lower it onto a semi-truck for transport. Although J&D Sawing maintained separate utilities for this building, based on Luttrell's testimony that he intended to eventually purchase the building and the real estate upon which it sat, it can be inferred that the building itself was the property of ISW and was not constructed using partnership funds.

[14] The trial court found that the crane and saw are J&D Sawing's personal property, and "the intent of the partners was for the crane and saw to remain personal property after they installed the crane and saw on [ISW's] real

property." (Appellant's App. Vol. II, p. 8). The trial court further found that because ISW "does not have any ownership interest in the crane and saw," it "could not use the crane and saw as collateral for its mortgage loan or Security Interest." (Appellant's App. Vol. II, p. 8). The Lender now asserts that, contrary to the trial court's determination, the ownership of the crane and saw as personal property is irrelevant in considering whether the crane and saw have become fixtures to the real property. Rather, the Lender insists that the crane and the saw "are enormous, necessary, integral pieces of machinery in a building built solely for them, and they are attached to other machinery that is attached to the real property." (Appellant's Br. p. 21). Furthermore, the Lender argues that "[a]ny objective observer would conclude that the [c]rane and [s]aw are permanent fixtures to a stone fabricating business given their size, the building they are housed in and based on the fact that the building, rails and legs would be useless without them." (Tr. p. 21).

[15] The Lender cites several cases, including some from other jurisdictions, to support the crux of its argument that the crane and saw should be deemed fixtures because they are essential to maintain the intended operation of the building in which they reside. *See, e.g., Hamilton v. Huntley*, 78 Ind. 521, 526-27 (Ind. 1881). We, however, rely on the well-established tenet that "the intention to make [personal property] a permanent accession must affirmatively appear." *Mergenthaler Linotype Co.*, 25 N.E.2d at 448. "[T]he intention which controls is . . . to be inferred from all the circumstances of the annexation." *Peed v. Bennett*, 52 N.E.2d 629, 631 (Ind. Ct. App. 1944). Here, the evidence presented

indicates that J&D Sawing "did not intend for any of its equipment to become a fixture or permanent accession to the [ISW] freehold." *Dinsmore*, 719 N.E.2d at 1287. Rather, Luttrell stated that J&D Sawing was a completely independent business from ISW; ISW had its own equipment and its operations in no way depended upon J&D Sawing's equipment. Although this particular building would be empty upon removal of the crane and the saw, the building would suffer no damage from the equipment's removal, and ISW's operations would not be disturbed. *See Mergenthaler Linotype Co.*, 25 N.E.2d at 449. Moreover, according to Luttrell, the parties apparently intended to maintain the equipment as J&D Sawing's personal property until such a time that the partnership could purchase the building and real property from ISW. *See Dinsmore*, 719 N.E.2d at 1287. Accordingly, based on the particular circumstances of this case, we find no error in the trial court's determination that the crane and the saw should be regarded as the personal property of J&D Sawing rather than a fixture subject to the Lender's mortgage liens.[4]

---

[4] Because we find that the crane and the saw are not fixtures, we need not address the parties' arguments concerning whether Short, as a partner in J&D Sawing, had authority to offer partnership property as collateral for ISW's mortgages. And, based on our determination that the pieces are not fixtures subject to a mortgage lien, we need not address the Lender's contention that the trial court erroneously determined that the Lender "lack[ed] standing to argue that J&D [Sawing] should be estopped from asserting its purported ownership of the [c]rane and the [s]aw to prevent [the] Lender's security interest from attaching to them." (Appellant's Br. p. 24).

# CONCLUSION

Based on the foregoing, we conclude that the crane and the saw are not fixtures subject to the Lender's mortgage liens; thus, the trial court did not err.

Affirmed.

Najam, J. and Bradford, J. concur