A. F. DAVIS, Respondent, v. PATRICK MUGAN *et al.*, Appellants.

Kansas City Court of Appeals, January 29, 1894.

1. **Fixtures:** MORTGAGOR AND MORTGAGEE: STONE CRUSHER AND ENGINE. On the facts of this case, *held*, as between mortgagor and mortgagee a stone crusher, engine and machinery are fixtures and passes to the purchaser at the mortgage sale. In the opinion the intention of the parties as well as their natural inferences are discussed in the light of the law of fixtures.

2. **Injunction:** ALTERNATIVE RELIEF: FOLLOWING PROPERTY. An injunction is the proper remedy to stop the sale of fixtures or, if they have in fact been sold, to stop the disposition of the proceeds of sale and such proceeds of sale may be followed, as long as they can be identified, into the hands of the trustee, or his agent or bailee.

*Appeal from the Jackson Circuit Court.*—HON. J. H. SLOVER, Judge.

AFFIRMED.

*Harkless & Marley* for appellants.

(1) The testimony clearly shows that this was portable trade machinery, to be used independent of the real estate, in no way a betterment, and in no way increasing or lessening its value as real estate, and was merely used for mining or crushing purposes and accessory to the rock business, could be moved without disturbance to the land, and as independent of it as any

machinery could possibly be. And in cases much stronger than this, such property has been held to be personal property. *Rogers v. Brokaw*, 25 N. J. Eq. 496; *Conrad v. Saginaw*, 54 Mich. 249; 39 Mich. 777; *Cooper v. Johnson*, 143 Mass. 108; *Hunts v. Mullanphy*, 1 Mo. 508; *Carpenter v. Walker*, 140 Mass. 416; *Ballutt v. Humphrey*, 78 Ind. 388. (2) Trade machinery is always regarded as personal property where its main feature is a business independent of the real estate. *Graves v. Pierce*, 54 Mo. 429; 132 Mass. 447; *DeLacey v. Lillman*, 83 Ala. 155; *Choate v. Kimball*, 19 S. W. Rep. 108; *Clore v. Lambert*, 78 Ky. 224; *Tifft v. Horton*, 53 N. Y. 377; *Railroad v. Morgan*, 21 Pac. Rep. 809; *Evans v. McLucas*, 15 S. C. 70; *Williams v. Mallory*, 11 S. E. Rep. 1068; *Lavenson v. Standard Oil Co.*, 80 Cal. 245; *Daney v. Burke*, 62 N. H. 627; *Speiden v. Parker*, 19 Atlantic Rep. 21; *Case Mfg. Co. v. Garver*, 13 N. E. Rep. 493; *Leaf v. Hewitt*, 1 Ohio St. 512; *Murdock v. Gifford*, 18 N. Y. 28; *Globe Mills v. Quinn*, 76 N. Y. 23; *Sword v. Low*, 13 N. E. Rep. 826. (3) The modern and weight of authority is to give preeminence to the question of intention to make the articles permanent accessions to the freehold, and mere physical annexation is no longer the test. *Hill v. Sewald*, 53 Pa. St. 271; *Vail v. Weaver* (1890), 132 Pa. St. 363; *Morris' Appeal*, 88 Pa. St. 368; *Seeger v. Petit*, 77 Pa. St. 440. (4) The evidence shows that the property had been sold and paid for, and entirely removed from the premises before the injunction writs were served on any of the defendants, hence injunction could not issue nor take the place of an action for debt or damages, because of the doing of a thing that might have been prevented by injunction. *Cole v. Duke*, 79 Ind. 107; *Alma v. Loehr*, 42 Kan. 368; High on Inj., [1 Ed.], sec. 4, p. 4; *Owen v. Ford*, 49 Mo. 436; *Ewing v. Rourke*, 14 Ore. 514. (5) If the money in the bank

was the proceeds of the fixtures that had been removed from the premises which plaintiff owned, the bank not being a purchaser but simply a stake-holder, without interest, attachment was a complete remedy. *State ex rel. Comfort v. Mason,* 96 Mo. 127.

*W. C. Scarritt* for respondent.

(1) The crusher, boiler and engine, and the house in which the boiler and engine were located, are, as shown by the evidence, fixtures and part of the realty which passed to respondent under the two deeds from the trustee to him. *Bank v. Kercheval,* 65 Mo. 686; *Thomas v. Davis,* 76 Mo. 72, and cases cited; *Cole v. Stewart,* 11 Cush. 182; *State ex rel. v. Marshal,* 4 Mo. App. 29; *Donnewald v. Real Estate Co.,* 44 Mo. App. 350; *Beckwith v. Boyce,* 9 Mo. 560; *Speiden v. Parker,* 19 Atl. Rep. (N. J.) 21; *Wadleigh v. Janvrin,* 41 N. H. 503; s. c., 77 Am. Dec., p. 780; 1 Washburn on Real Property, [5 Ed.], vol. 1, pp. 22 and 24; *Appeal of Williams,* 16 Atl. Rep. (Pa.), 815; *Curran v. Smith,* 37 Ill. 69; *Cavis v. Beckford,* 62 N. H. 229 s. c., 13 Am. St. Rep. 554; *Horne v. Smith,* 105 N. C. 322 s. c., 18 Am. St., Rep. 903; *Roseville A. M. Co. v. Iowa Co.,* 15 Col. 29; 22 Am. St. Rep. 373; *Brennan v. Whitaker,* 15 Ohio St. 446. (2) The property in question being fixtures, therefore property of plaintiff, he is entitled to the proceeds thereof, and Mrs. Mugan holds such proceeds in trust for him, and as long as the trust property can be traced and followed, the property into which it has been converted remains subject to the trust; and if she has mixed trust funds with her own money, the whole will be treated as trust property, except so far as she may be able to distinguish what is hers. *Snorgrass v. Moore,* 30 Mo. App. 239; *Harrison v.*

*Smith*, 83 Mo. 213; *Stoller v. Coates*, 88 Mo. 520.    (3)
The plaintiff's suit having for its object the following
of this fund and impressing it with the trust, the court
has jurisdiction.    *Sherwood v. Saxton*, 63 Mo. 82;
Revised Statutes, 1889, sec. 5491;   *Ware v. Johnson*,
55 Mo. 504; *Paddock v. Somes*, 102 Mo. 236.

GILL, J.—This suit involves the title to a steam
boiler, engine and machinery, and building covering
same, formerly used in the rock crushing business by
defendant Mugan, in the southern suburbs of Kansas
City.

In March, 1886, Mrs. Mugan owned a piece of
land—a rocky bluff on south Grand avenue.   At that
time she, or her husband, borrowed $3,000 from Davis,
the treasurer of the board of curators of Central college,
and gave her note therefor due in five years, securing
the same by a deed of trust on the property.   Subse-
quently, in the early part of the year 1889, the defend-
ants Mugan erected on the property, and on the edge
of the bluff where the street was cut through, a mill
for crushing rock—the broken stone to be sold for
macadamizing and other purposes about the city.   The
improvement consisted of a steam boiler and forty
horse power engine, which were enclosed by a frame,
shingle roof building, eighteen by thirty feet.   The
boiler was placed upon a foundation of solid stone;
the foundation to the engine was brick laid in cement,
into which the engine was fastened by iron rods,
extending several feet into the foundation.   The boiler
and engine were connected by iron pipes.   Outside of
the house, and within fifteen or twenty feet of it, was
erected a stone crusher.   The crusher itself, weighing
about twenty-three thousand pounds, was attached to
two beams, and these rested upon other beams laid in
the form of a square, which beams were about eight by

ten inches in breadth and thickness, and about six to eight feet in length, and which were built up a sufficient height to bring the top of the crusher on a level with the road from the quarry. The Mugans owned other property in the vicinity, and which, like that where the rock crusher was situated, was rocky, bluff land.

Very shortly after the erection of this rock mill the Mugans applied to, and secured from, the college corporation an additional loan of $3,000, and secured it by a second deed of trust on the same property. There was default on both loans; and, pursuant to the terms of the deeds of trust, the trustee, in May, 1891, sold the property at public sale, and plaintiff Davis (acting probably for the college) became the purchaser, and a deed was made to him by the trustee.

In May of the following year (1892), Mrs. Mugan assumed to, and did, sell the rock mill and all the machinery, and while the purchaser was in the act of moving the same from the premises, plaintiff brought this action, asking an alternative remedy, *first*, to restrain the Mugans from disposing of the property, or *second*, if already sold, that the proceeds of such sale be adjudged to belong to plaintiff.

At the hearing below, the court decided that the property in dispute (the house, engine, boiler and crusher) were fixtures and belonged to the owner of land; that the same had been converted into money, to-wit, the sum of $1,300, which was then in the possession of the defendant bank, and which the bank was ordered to pay over to the plaintiff. From this judgment defendants appealed.

It will be seen, that this is a controversy between the mortgagor and mortgagee—the question being, whether this stone mill, consisting of boiler, engine and machinery and building, was personal property, or had it become a part of the realty by reason of its attach-

Davis v. Mugan.

ment thereto. If it was the latter, then plaintiff was entitled to it, and the judgment of the circuit court was correct; if the former, it was erroneous.

By fixtures are meant those articles which were chattels, but which have become a part of the real estate by reason of being annexed or affixed thereto. But while this definition, in substance, is repeated in the books, there are scarcely any rules for determining when chattels become so *annexed* or *fixed*. Each case is made to turn largely on its particular circumstances. In controversies between landlord and tenant there is a most liberal indulgence towards the claim of the tenant. He is permitted to hold as chattels most any improvement he may place on the leased premises, and allowed to remove the same during his tenancy; conditioned, only, that in so removing he do not injure the freehold. This liberal treatment towards the tenant, comes, not only from the law's encouragement of industry and trade, but because it will be assumed that, in placing the chattels in that condition, it was the intention of the tenant at the time, to remove it and that the landlord so understood it.

But as between vendor and vendee, heir and executor or administrator and mortgagor and mortgagee, there is no such indulgence towards him who annexes personal property to the land; a much stricter rule applies, and the presumption is the contrary of that given to the tenant. For it will there be presumed that the owner of the land intended the improvement as an accessory to the inheritance and as a lasting benefit thereto. It will not be presumed that the owner of the fee intended the work as a mere temporary improvement, to be by him taken away in case he should sell the land, or to be removed in case the mortgagee should foreclose.

Under the old law, the principal test as to what

was or was not a fixture, was said to be the nature of the physical attachment to the soil. But this theory has long since been exploded. "And while courts still refer to the character of the annexation as one element in determining whether an article is a fixture, greater stress is laid upon the nature and adaptation of the article annexed, the uses and purposes to which" the land "is appropriated at the time the annexation is made, and the relations of the party making it to the property in question, as settling that a permanent accession to the freehold was intended to be made by the annexation of the article." 1 Wash., Real Property [5 Ed.], p. 22.

Little fault, then, can be found with defendant's counsel when they so earnestly insist that the *intention* of the freeholder and mortgagor in erecting this stone mill should have great weight in determining its character, that is, whether or not Mugan intended the same as a permanent structure. But, as said by HENRY, J., in *State Savings Bank v. Kercheval* (65 Mo. 682), "the intention of the party making the improvement, ultimately to remove it from the premises, will not, by any means, be a controlling fact. One may erect a brick or stone house with an intention, after brief occupancy, to tear it down and build another on the same spot, but that intention would not make the building a chattel. The distinction which gives a movable object an immovable character, results from facts and circumstances determined by the law itself, and could neither be established nor taken away by the simple declaration of the proprietor," citing, *Snedeker v. Warring* (2 Kernan 178). The same learned judge quotes further from *Teaff v. Hewett* (1 Ohio St. 511), where, in speaking of this *intention* of the party in making the article a permanent accession to the freehold, the Ohio court says, that such an intention as

will be "inferred from the nature of the article as fixed, the relation and situation of the party making the annexation, the structure and mode of annexation and the purpose and use for which the annexation has been made, is a controlling circumstance in determining whether the structure is to be regarded as a fixture or not."

So, then, when we come to determine here whether this rock mill was intended as a permanent structure —such an improvement as was a fixture and part of the freehold—we are not bound by the assertion of Mugan that it was intended by him only as a temporary annexation, and that he contemplated using it there for a season and then remove it elsewhere. The question is, rather, what had the mortgagee, or other persons, the right to infer from the nature of the structure, the relation and situation of Mugan towards the property, and the circumstances attending the annexation of the engine, boiler, machinery etc., to the freehold, as to what was intended. This is the test as to the intention; for, as said in *Thomas v. Davis* (76 Mo. 72), the mortgagor "has absolute dominion over the property, both real and personal, and his intention in making the annexation is to be determined by a consideration of the character of the annexation, and its appropriation or adaptation to the use or purpose of that part of the realty with which it is connected." See, also, Ewell on Fixtures, p. 21, 22. "His intention to make them personal property, would not alter their legal character. This would depend on *facts*, and not on his opinion." *Rogers v. Brokaw*, 25 N. J. Eq. 497.

When, now, we consider the character of this rock mill, of what it consisted, how and where located and how constructed, it would naturally be inferred that it was intended as a permanent fixture to be operated there until worn out. It consisted of heavy and

cumbrous engines, boiler and machinery, solidly and permanently imbedded in stone and walls of brick laid in cement and, as far as was possible, well housed; so that when the mortgagee made the last loan of $3,000 it might be well·concluded by him that there was additional security for his money, and it must have been so regarded. For it ·must be remembered that when the Mugans borrowed the additional $3,000 this improvement had just been finished, and its annexation was probably considered as adding to the value of the land and therefore to the loaner's security. The claim of the mortgagee that the attached chattel was part of the realty, is regarded with more favor where the annexation was already made at the time the money was loaned and mortgages executed, than where the addition is subsequent to the date of the mortgage. The reason for this is, that the mortgagee advances his money on the faith of the property as it then was. 1 Jones on Mortg., sec. 436.

More than this, the nature of the structure, its apparent permanent character was fixed by a consideration of the nature of the land on which it was placed as well as the other land .owned by the mortgagor in the vicinity. This property contained an exhaustless supply of stone for the operation of the mill, so that the adaptability of the improvement as a permanent structure in that locality was easily seen.

In our opinion, then, the trial court rightly held the mill and machinery to be fixtures, annexed to, and passing with, the land.

Neither do we entertain any doubt that the plaintiff was entitled to the remedy here adopted. At the date of instituting the suit plaintiff was uncertain as to what Mrs. Mugan had done with her property. It seems, however, that she had already made a completed sale thereof, and had deposited the proceeds in the

Metropolitan bank. The plaintiff sought to follow and reclaim the property in whatever shape it might be found. When Mrs. Mugan severed the property from the freehold she became a trustee holding the same for the use of the plaintiff; and when she sold the same and deposited the proceeds in defendants' bank, the trust still attached to the money in the hands of the depository. The change in the nature of the property did not destroy the trust. So long as it could be traced and identified in the hands of the trustee, her agent or bailee, it could be reached by the *cestui que trust.* "Where it is sought to trace up or follow the trust property, a proceeding in equity against the trustee and all others interested would be the only remedy which would be commensurate with the right demanded. A court of equity would be the only tribunal whose jurisdiction would be sufficiently broad and flexible to do complete and adequate justice." WAGNER, J., in *Sherwood v. Saxton*, 63 Mo. 82.

And the injunctive process was rightfully invoked to hold the property *in tact* until legally or equitably disposed of by the court. Section 5491, Revised Statutes, 1889. The Mugans were insolvent, and if, therefore, the money had been permitted to remain at their disposal the plaintiff's rights were endangered.

The judgment herein was for the right party and will be affirmed. All concur.