# OCHS v. TILTON.

[No. 22,524. Filed January 14, 1914.]

1. APPEAL.—*Review.*—*Evidence.*—The court in the consideration of the evidence on appeal is limited to that which is uncontradicted, and, where there is controversy, to that most favorable to appellee, together with such inferences as may fairly be drawn in favor of appellee. p. 82.

2. FIXTURES.—*What Constitutes.*—*Definition.*—While the determination of what constitutes a fixture depends largely upon the relationship of the parties to the controversy, and is largely controlled by the particular circumstances of each case, a fixture may be defined generally as a thing that originally was a chattel, but has become a part of real estate by reason of attachment thereto by one having an interest therein. p. 85.

3. FIXTURES.—*What Constitutes.*—*Requisites.*—The true test of a fixture requires annexation of the article, either actual or constructive; adaptation to the use of the realty, or part thereof, with which the article is connected; and an intention by the party annexing it to thereby make the article a permanent accession to the freehold. p. 85.

4. FIXTURES.—*Changing Chattel to Realty.*—*Question of Law and Fact.*—The change of a chattel into realty involves a mixed question of law and fact. p. 85.

5. FIXTURES.—*Annexation.*—*Method.*—If an article is adapted for attachment to the realty, and there is an intent to dedicate it thereto, no restraint on its mobility, other than the will of the owner, is required to make it a fixture, and it is not important that the article be fastened by any independent device such as nails, bolts or cement. p. 85.

6. FIXTURES.—*Changing Chattel to Realty.*—*Intent.*—The intent to dedicate an article to the realty so as to become a fixture may be inferred from the nature of the article, the relation and situation of the party in the alleged annexation, and the use or purpose for which the article was annexed. p. 85.

7. FIXTURES.—*What Constitute.*—*Tobacco Sticks.*—Tobacco sticks furnished by a vendor to a former tenant who became the pur-

chaser of the farm, and used either in the fields or in the barns during the curing process, some of which were on the farm and others sent there to fill the necessity required by a larger crop, did not constitute fixtures. p. 86.

8. VENDOR AND PURCHASER.—*Action.*—*Removal of Property by Vendor.*—The rule in relation to a tenant's right to remove buildings, etc., after the expiration of the lease, does not govern in actions between vendor and purchaser, so that a vendor did not lose his right to the possession of tobacco sticks left upon the premises sold by failing to demand them until long after conveying the land to one who was at the time a tenant thereon. p. 86.

From Dearborn Circuit Court; *George E. Downey,* Judge.

Action by Robert L. Tilton against John Ochs. From a judgment for plaintiff, the defendant appeals. (Transferred from the Appellate Court under §1405 Burns 1908, Acts 1901 p. 590.) *Affirmed.*

*McMullen & McMullens,* for appellant.
*Givan & Givan,* for appellee.

MORRIS, C. J.—This was an action in replevin, by appellee against appellant, to recover possession of about 15,000 tobacco sticks. The cause was tried by the court and resulted in a finding and judgment for appellee. The only questions here involved depend on the sufficiency of the evidence. There is some conflict in the testimony and

1. therefore, in its consideration, this court is limited to that which is uncontradicted, and, where there is controversy, to that most favorable to appellee, together with such fair inferences, favorable to appelle, as might be drawn. *Dickason* v. *Indiana Creosoting Co.* (1913), 179 Ind. 640, 102 N. E. 1.

On March 28, 1910, appellee conveyed to appellant by warranty deed, a farm in Dearborn County. There were two barns on the farm, and in the one located on what is called the "hill place", the sticks in controversy were situated. Appellant claims the sticks were fixtures. Appellee had owned the farm for about ten years, and, at the same time owned another one, and also a tobacco warehouse,

located in Rising Sun.  These two barns were built about ten years ago and were intended for general farm purposes, including the housing of tobacco.  While appellee owned this farm, he rented it to various tenants, who, each year, raised tobacco, as well as other farm crops; the other farm was used for like purposes.  Both barns, on the farm appellant purchased, were "tiered" for housing tobacco.  The tiering consisted of poles resting on horizontal supports.  The vertical distance between the tiering was about three and one-half feet.  In the upper part of the barns, the tier poles were fastened, while in the lower part they were loose, and were often removed to make room for hay.  Green tobacco, shortly after cutting, was hung on slender sticks about four feet and three inches long, and these sticks, with the tobacco hanging thereon, were laid six inches apart, across the space between the tier poles, each end of a stick resting on a pole.  In cutting the tobacco, sometimes these sticks were driven in the ground, and the tobacco hung thereon; at other times the tobacco was cut and hung on the sticks, without driving them in the ground.  In either event, the tobacco hanging on the sticks was placed in a wagon, hauled to the barn, and tiered for curing.  After the tobacco was cured, it was hauled to a tobacco warehouse and the same sticks were used in such hauling.  Sticks of like character were used by appellee for hanging tobacco in his warehouse.  The sticks in controversy were used originally in appellee's warehouse.  From time to time, as needed, appellee sent sticks from his warehouse to each of his farms, and, on various occasions, sticks were transferred from one farm to another, and from each farm to the warehouse, depending on the varying needs of each particular place.  In the fall of 1909, appellee sent 5,000 sticks to the farm appellant purchased and which was then in part occupied by appellant, as tenant; a portion of these sticks came from the other farm, and the remainder from the warehouse.  There was an unusually large crop of tobacco

raised on this farm in 1909, and the 5,000 sticks sent there, together with about 10,000 already there, were not sufficient to hang all the tobacco raised, and appellant borrowed other sticks from a neighboring farmer to supply the deficiency. The sticks in controversy consisted of those already there previous to the fall of 1909 and the 5,000 sent at that time.

Appellant, during the year 1909, was a tenant of appellee, on the part of the farm conveyed, called the "hill place", and where he raised a large quantity of tobacco. By the terms of the rental contract, which were the same as those with previous tenants of the farm, appellant grew the tobacco and delivered an agreed portion thereof to appellee, as rental, appellee furnishing the barn room for curing, also the sticks on which to hang the tobacco. When the deed was executed, the sticks in controversy and the tobacco crop of 1909 were in the barns. The tobacco was afterwards divided and hauled away in the following April or May. In July, 1910, appellee demanded the sticks. They were not reserved by the grantor, in the deed, and nothing was said by either party about them, either before, or at the time the deed was executed. Sticks of the same kind as here in controversy are commonly used in hauling tobacco from field to barn, in hanging it in barns for curing, and in hauling the tobacco to warehouses. In 1909, there were two houses on the farm; appellant occupied one, and another tenant the other. It appears that appellant raised tobacco chiefly, and stored it in the barn on the "hill place". Aside from a small quantity of hay owned by appellee, this barn contained in the winter of 1909-1910, nothing but tobacco grown by appellant. Before appellant became a tenant, the barn had been used regularly for housing hay and live stock, as well as tobacco. Appellant was well acquainted with the manner of operating the farm, for some years before he occupied it as tenant.

A fixture may be defined as a thing that originally was

a chattel, but has become a part of real estate by reason of attachment thereto by one having an interest therein. *Davis* v. *Mugan* (1893), 56 Mo. App. 311.

Rules for determining questions of this kind are various, and depend largely upon the relationship of the parties to the controversy, such as that of landlord and tenant, vendor and purchaser, etc. However, because of the very nature of the subject, each case must in large degree be controlled by its own particular circumstances. *Binkley* v. *Forkner* (1888), 117 Ind. 176, 19 N. E. 753, 3 L. R. A. 33.

A general rule, recognized by the weight of authority, is that the true test of a fixture requires the united application of the following requisites: (1) annexation of the article, which may be either actual or constructive; (2) adaptation to the use of the realty, or part thereof, with which the article is connected; (3) the party annexing must have intended thereby to make the article a permanent accession to the freehold. *Binkley* v. *Forkner, supra; Teaff* v. *Hewitt* (1853), 1 Ohio St. 511, 59 Am. Dec. 634; 19 Cyc. 1037. The change of a chattel into realty involves a mixed question of law and fact. *McFarlane* v. *Foley* (1901), 27 Ind. App. 484, 60 N. E. 357, 87 Am. St. 264. Counsel for appellant are quite right in saying that it is not important that the article in question be fastened by any independent device such as nails, bolts or cement. If the article is adapted for attachment to the realty, and there is an intent to dedicate it thereto, no restraint on its mobility, other than the will of the owner, is required. 19 Cyc. 1039. The matter of supreme importance is the intent, and this may be inferred from the nature of the article, the relation and situation of the party in the alleged annexation, and the use or purpose for which it was annexed. *White* v. *Cincinnati, etc., R. Co.* (1904), 34 Ind. App. 287, 71 N. E. 276; *Young* v. *Baxter* (1876), 55 Ind. 188; 19 Cyc. 1037.

Appellant cites *Bishop* v. *Bishop* (1854), 11 N. Y. 123,

62 Am. Dec. 68, wherein it was held that hop poles were realty. It appears that the decision of the court in that case was grounded on the reason that the hop vine is a perennial, and requires a pole for its support. In *Winslow* v. *Bromich* (1894), 54 Kan. 300, 38 Pac. 275, 45 Am. St. 285, the controversy was over some sugar wagons, used in a sugar mill for holding syrup and conveying it from place to place in the mill. They were of the same character as wagons in ordinary use in sugar mills, and were necessary in operating the mill. They had wheels, but did not run on rails or tracks, and were capable of being moved anywhere on the floor of the mill. It was held that the wagons were not fixtures.

Tobacco sticks, under the evidence here, are necessary to the proper handling of a crop. It does not appear however that they were any better adapted for use in the 7. barns on the farm appellant purchased than in hauling the tobacco from the field, or to the warehouse, or in hanging it in the warehouse. They were, in fact, used for all such purposes, and were changed from warehouse to farm, and farm to farm, as need therefor required. Sticks of like character were borrowed and loaned, among neighbors in that community—a thing that conflicts with the theory of their appropriateness for annexation to realty. We cannot say that this evidence compels the inference that appellee intended to dedicate these articles to the realty, as a permanent accession thereto, or any part thereof, or that it fairly forces the conclusion that they were adapted to such purpose. We therefore hold that there was no error in holding that these articles were not fixtures.

Appellee made no demand for the sticks until July, 1910. Appellant contends that if it be conceded that the articles were not fixtures, appellee lost his right thereto by 8. delay. Cases are cited by appellant, in actions by tenants against landlords, in relation to the tenant's right to remove buildings, etc., after the expiration of the

lease. It has been held that a tenant's right to remove a building constructed by him on leased land is restricted to the duration of the tenancy. *Griffin* v. *Ransdell* (1880), 71 Ind. 440. However, the rule applicable in such relation does not govern in actions between vendor and vendee. 19 Cyc. 1071.

There is no error in the record. Judgment affirmed.

NOTE.—Reported in 103 N. E. 837. See, also, under (1) 3 Cyc. 348, 360; (2) 19 Cyc. 1037; (3, 4) 19 Cyc. 1038; (5) 19 Cyc. 1040, 1045; (6) 19 Cyc. 1045. As to what are fixtures, see 14 Am. Dec. 303; 24 Am. Rep. 726; 84 Am. St. 877. As to whether things placed on land with the intention of annexing them are fixtures when they are never actually attached, see 69 L. R. A. 892.