HIPSKIND HEATING & PLUMBING CO., INC. *v.* GENERAL INDUSTRIES, INC.

[No. 19,689. Filed December 17, 1963. Rehearing denied January 15, 1964. Transfer denied February 17, 1965, with opinion reported in 204 N. E. 2d 339.]

648

*Hasley & Eggers* and *Max E. Hobbs,* of Fort Wayne, for appellants.

*Shoaff, Keegan & Baird* and *Robert Y. Keegan,* of Fort Wayne, for appellees.

PFAFF, J.—This is an appeal from a judgment of the Allen Superior Court No. 3, denying plaintiff-appellant relief in an action brought for foreclosure of a mechanic's lien upon certain real estate owned by the appellee.

The cause was submitted for trial before the court upon the issues formed by appellant's amended complaint and appellee's answer thereto. At the close of appellant's evidence, appellee moved for a directed verdict against the plaintiff-appellant, which was granted by the court, and judgment was entered thereon that the plaintiff take nothing by its complaint and that the plaintiff pay the costs of the action.

Appellant filed its motion for a new trial setting forth as cause therefor that the decision of the court is contrary to law, which motion was subsequently overruled by the court. The sole assignment of error in this appeal is the court's overruling of appellant's motion for a new trial.

The motion made by the defendant-appellee at the conclusion of the plaintiff-appellant's evidence operates or has the same effect as a demurrer to the plaintiff's evidence. *Smith* v. *Switzer* (1933), 205 Ind. 404, 409, 186 N. E. 764; *Roop, Adm'r.* v.

*Woods* (1962), 134 Ind. App. 88, 186 N. E. 2d 439, 440; *Abernathy* v. *McCoy* (1926), 91 Ind. App. 574, 600, 154 N. E. 682 (Transfer denied). It is to be tested by the same rules of law as is a request for a peremptory instruction to a jury. The sole question presented to the court is, therefore, whether or not the evidence introduced in behalf of the plaintiff, assuming it to be true, and considering as proved all facts which the evidence proves, or by legitimate inference tends to prove, establishes the plaintiff's case as laid. *Smith* v. *Switzer, supra; Abernathy* v. *McCoy, supra.*

On appeal this court, in reviewing the trial court's action, may consider only the evidence and reasonable inferences which may be drawn therefrom most favorable to the plaintiff-appellant, to determine if there is any evidence from which it may be reasonably inferred that the plaintiff-appellant was entitled to relief. *Hill* v. *Rogers* (1951), 121 Ind. App. 708, 712, 99 N. E. 2d 270 (Transfer denied).

In reviewing the evidence in the record before us, we believe that the appellant's evidence tended to prove the following material facts:

At some time during the month of March of 1958, there was a parol agreement entered into between appellant and appellee whereby the former agreed to install a fire sprinkler system throughout an entire manufacturing plant building owned by the latter. That certain preliminary work necessary to the installation was begun on March 17, 1958, and that actual installation of the system was commenced on May 13, 1958. The system was to be installed and connected to the city water supply in conformance with certain regulations

and requirements of fire protection companies and the Underwriters' Manual. Pursuant to the agreement between the parties, approval was obtained from the Indiana Rating Bureau prior to commencing performance of the contract. Upon completion of the work, the requirements of the Indiana Rating Bureau required that a test for leaks in the system be conducted by putting a 200-pound hydrostatic test on all pipe, including the underground. A new system would be inspected by the Bureau after it had been installed.

At various times prior to May 13, 1958, modifications were made to the original agreement, which limited the extent of the sprinkler system to be installed. The final contract price for the system, as modified, was set at $18,814. A proposed written contract, setting forth the nature of the undertaking and embodying all terms and conditions thereof, was signed by appellant and presented to appellee for signature at some time after May 23, 1958, one clause of which provided for monthly progress payments by appellee equal to ninety per cent of the value of labor and materials incorporated in the work and of materials stored at the work site.

At all times between May 13, 1958, and June 16, 1958, appellant rendered performance according to the agreement, as modified, installing the system in accordance with the general usage in the trade relating to the installation of the type of system in the type of building. The sprinkler system was designed to fit the particular building owned by the appellee and consisted mostly of piping, hangers to hang the piping and the sprinkler heads. On June 16, 1958, the building was totally consumed by fire.

As of the date of the fire, approximately forty per

cent of the contract had been performed, thirty-five to forty per cent of to the city water supply in conformance with certain regulations and requirements of fire protection companies and the Underwriters' Manual. Pursuant to the agreement between the parties, approval was obtained from the Indiana Rating Bureau prior to commencing performance of the contract. Upon completion of the work, the requirements of the Indiana Rating Bureau required that a test for leaks in the system be conducted by putting a 200-pound hydrostatic test on all pipe, including the underground. A new system would be inspected by the Bureau after it had been installed.

At various times prior to May 13, 1958, modifications were made to the original agreement, which limited the extent of the sprinkler system to be installed. The final contract price for the system, as modified, was set at $18,814. A proposed written contract, setting forth the nature of the undertaking and embodying all terms and conditions thereof, was signed by appellant and presented to appellee for signature at some time after May 23, 1958, one clause of which provided for monthly progress payments by appellee equal to ninety per cent of the value of labor and materials incorporated in the work and of materials stored at the work site.

At all times between May 13, 1958, and June 16, 1958, appellant rendered performance according to the agreement, as modified, installing the system in accordance with the general usage in the trade relating to the installation of the type of system in the type of building. The sprinkler system was designed to fit the particular building owned by the appellee and consisted mostly of piping, hangers to hang the piping and the sprinkler

heads. On June 16, 1958, the building was totally consumed by fire.

As of the date of the fire, approximately forty per cent of the contract had been performed, thirty-five to forty per cent of the physical equipment had been put into the building, and forty-five per cent of the labor had been furnished. None of the underground water supply, which was to run from the property line to the building, had been installed; nor had any part of the valve pit or any of the underground pipe leading to the building.

The total value of preliminary work done, which was necessary to the installation of the system and of materials lost in the fire, including the cost of installation, was approximately $7,400. On or about June 27, 1958, appellant submitted an itemized statement of work done and materials furnished, up to the date of the fire, to the appellee. At some time within thirty days from the date of the fire appellant made demand upon appellee for payment for the work that had been done up until the fire. Since all salvageable parts not yet installed were returned to appellant's inventory, no charge therefor was included in appellant's demand. Demand for payment was refused by appellee. Appellee has not offered to pay for any part of the work done up until the date of the fire and all amounts therefor remain unpaid. Appellant does not contend that the fire was caused through the fault of appellee.

At the outset, we are confronted with the principle of law adopted by our Supreme Court in the case of *Krause* v. *Board, etc.* (1904), 162 Ind. 278, 70 N. E. 264, 65 L.R.A. 111, 102 Am. St. Rep. 203, 1 Ann. Cas. 460, which, if applicable to the in-

stant case, is controlling and determinative upon the issues raised by appellant in this appeal.

In the *Krause* case, a written contract was entered into between a contractor and the trustees of a school town whereby the former agreed to furnish the materials for, and to erect and finish, an annex to a school building belonging to the trustees, and also to make certain improvements upon the latter building for a total price of $3,853.35, to be paid upon completion of the work. Provision was also made for progress payments based upon estimates to be furnished by the architect of materials provided and labor performed, the amounts so paid to be deducted from the final estimate provided for by contract. The contract also provided:

> " 'The party of the first part [the school town] shall not be in any manner answerable, accountable, or responsible for any loss or damage that shall or may happen to said work or any part thereof, or for any of the materials or anything used or employed in finishing the same.' "

Attached to the contract were specifications providing that all work, when finished, was to be turned over perfect, complete and undamaged in every particular; that the whole work was to be inspected as it progressed and that it was to be accepted by the owner and the architect before a final settlement was made. On July 24, 1899, the building, which was the subject matter of the contract, was gutted by fire to such an extent that further performance under the contract was rendered impossible. As of that date, the contractor had progressed with its work to the point where the cost of completion was $35.00 and the value of the work done and materials furnished was thirty-five cents less than the contract price. Suit was filed by the trustees to recover upon the performance bond executed by the contractor,

alleging a breach of contract in that the contractor failed to proceed with the execution of the contract after the fire. By way of cross-action against the trustees the contractor filed a "cross-complaint" seeking, first, to recover for a balance unpaid under the contract, and, second, to recover in *quantum meruit*. Upon the issue of recovery on the contract, our Supreme Court quoted with approval from the case of *Butterfield* v. *Byron* (1891), 153 Mass. 517, 27 N. E. 667, and said:

> " . . . The observations of the court in *Butterfield* v. *Byron* . . . are quite to the point upon the matter now under consideration. . . . 'The agreement of each to complete the performance of the contract . . . was on an implied condition that the building should continue in existence. Neither can recover anything of the other under the contract, for neither has performed the contract so that its stipulations can be availed of.' " (Our omissions)

Applying the principles set forth in the Butterfield case relative to the question of recovery upon the contract, and citing authorities from other states and from England, our Supreme Court in the *Krause* case held that performance by both parties was excused where the subject matter of the contract (to bestow labor or materials upon a particular building already in existence) was destroyed, without the fault of either party, prior to full performance of the contract. Also, the court expressly rejected the contention, advanced by the trustees, that the provision of the contract that the school town "shall not be in any manner answerable, accountable, or responsible for any loss or damage that shall or may happen to said work or any part thereof", amounts to a special provision which guarded against any implication that would leave the trustees to bear any part of the loss or damage resulting from the destruction of the property.

Upon the question of recovery by the contractor on its cross-action against the trustees, the Supreme Court in the *Krause* case denied recovery on the contract, holding that it was unapportionable and performance of the whole work was a condition precedent to recovery thereon. As to the question of the contractor's right to recover on a common count, the issue raised by appellant in this appeal, the court looked to the English case of *Appleby* v. *Myers,* 2 L.R.C.P. 651, and stated:

> "The subject under consideration received an exhaustive consideration in *Appleby* v. *Myers,* 2 L.R.C.P. 651. That was a case stated by consent without pleadings. The contract was to install a steam boiler, engine, etc., in a building belonging to defendant, for a consideration to be paid on the completion of the work. The building was burned before the work was finished. The court said: 'Where, as in the present case, the premises are destroyed without fault on either side, it is a misfortune equally affecting both parties; *excusing both from further performance of the contract, but giving a cause of acion to neither.'* . . . " (Our emphasis)

Further, the court, in its opinion in the *Krause* case, quoted from Story, *Bailments* (9th ed.), §426b, as follows:

> " 'Suppose there is a contract to do work on a thing by the job (as, for example, repairs on a ship), for a stipulated price for the whole work, and the thing should accidentally perish, or be destroyed, without any default on either side, before the job is completed, the question would then arise, whether the workman would be entitled to compensation *pro tanto* for his work and labor done, and materials applied up to the time of the loss or destruction. It would seem, that, by the common law in such a case (independent of any usage of trade) the workman would not be entitled to any compensation; and that the rule would apply, that the thing should perish to the employer, and the work to the mechanic.' "

Also, in its holding upon the same question the court stated:

> " . . . As applied to this case, we may well adopt the following, which we take from 15 Am. & Eng. Ency. Law (2d ed.), 1090: 'In a case of this nature, the defendant [owner] receives no benefit, and, if he is equally blameless and irresponsible for the accident by which the property is destroyed, why should not the law leave the parties as it finds them, and let each suffer his own loss?'
>
> "We think that neither said firm nor the appellee was entitled to recover in this case. . . . "

Appellant, in its brief, quotes at length from the case of *Butterfield* v. *Byron, supra,* in support of the proposition that it has the right to recover in *quantum meruit* for work done and materials furnished up until the time of the fire, including that part of the court's opinion appearing at pp. 522-524, which reads as follows:

> "In this country, where one is to make repairs on a house of another under a special contract, or is to furnish a part of the work and materials used in the erection of a house, and his contract becomes impossible of performance on account of the destruction of the house, the rule is uniform, so far as the authorities have come to our attention, that he may recover for what he has done or furnished. . . .
>
> " . . .
>
> "We are of opinion that the consideration which the defendant was to receive was an entire sum for the performance of the contract, and that the payments made were merely advances on account of it, and that, on his failure to perform the contract, there was a failure of consideration which gave the plaintiff a right to sue for money had and received, and that the like failure of consideration on the other side gave the defendant a right to sue on an implied assumpsit for work done and materials found."

It seems clear that in so holding the Massachusetts court rejected the English rule, particularly as found in the case of *Appleby* v. *Myers, supra,* and by further stating:

" . . . The decisions in England differ from those of Massachusetts, and of most of the other states of this country. There the general rule, stated broadly, seems to be that the loss must remain where it first falls, and that neither of the parties can recover of the other for anything done under the contract. . . .

" . . .

"In England it is held that one who has partly performed a contract on property of another which is destroyed without the fault of either party, can recover nothing; and on the other hand, that one who has advanced payments on account of labor and materials furnished under such circumstances cannot recover back the money. *Appleby* v. *Myers,* L. R. 2 C. P. 651. . . . " *Butterfield* v. *Byron, supra,* at p. 522.

In the *Krause* case, the question of a right to recover upon the contract was present and our Supreme Court quoted with approval the rule of *Butterfield* v. *Byron, supra,* upon that issue. Upon the question of a right to recover in *quantum meruit,* also an issue in the *Butterfield* case, our Supreme Court quoted with approval from the rule of *Appleby* v. *Myers, supra,* which had been rejected by the Massachusetts court, and decided that issue. Although our Supreme Court did not expressly reject the principles of *quantum meruit* recovery discussed and applied in the *Butterfield* case, it is significant, we think, that the court in the *Krause* case adopted the English view expressed in the case of *Appleby* v. *Myers, supra,* as law applicable to the issue.

Appellant has cited numerous authorities from other jurisdictions which support its right to recover in *quan-*

*tum meruit* for work done and materials furnished up until the time of the fire, which may well represent the majority view in this country.

Appellant further asserts in its brief:

"In fact, England is the only place where the decided cases support the trial court."

Whether or not the rule adopted by our Supreme Court in the case of *Krause* v. *Board, etc., supra,* reflects the majority view in this country is not within our province to decide. In this connection see Williston, *Contracts* (Rev. Ed.), Vol. VI, §1975, pp. 5549-5550.

We are of the opinion that the issue of law presented by this appeal is not a case of first impression in this state and that it has been decided by our Supreme Court in the case of *Krause* v. *Board, etc., supra,* which is precedent binding upon this court, and which was followed by this court in the case of *Rossville Alc. & Ch. Corp.* v. *Steel Constr. Co.* (1938), 104 Ind. App. 515, 8 N. E. 2d 1016. See also *In re Petitions to Transfer Appeals* (1931), 202 Ind. 365, 174 N. E. 812; Restatement of Law of Contracts, American Law Institute, §281, ch. 10, p. 415.

For the reasons heretofore stated, we find that the trial court did not err in rendering judgment against the plaintiff, appellant herein, at the close of plaintiff-appellant's evidence.

The judgment of the trial court is therefore affirmed.

Hunter, P. J., and Kelley, J., concur.

Mote, J., dissents with opinion.

DISSENTING OPINION

MOTE, J.—Respectfully, I must dissent to the majority opinion in this appeal. Much of the law and the facts set forth in the majority opinion we are willing to, and do, adopt. However, for a proper understanding of the issues presented by the pleadings we deem it advisable to set out the amended complaint which, omitting the formal parts, is as follows:

"1. On the —— day of March, 1958, plaintiff and defendant entered into a contract by which plaintiff agreed to furnish the material for, and to perform all the necessary labor in, the installation of a fire prevention sprinkler system in and for the main manufacturing plant building on the real estate in Allen County, Indiana, described as follows:

All that part of the northwest quarter of Section 17 and the northeast quarter of Section 18, Township 30 North, Range 13 East, in Allen County, Indiana, which lies east of the highway known as Wayne Trace, south of the Pennsylvania Railroad right-of-way, and north of the Moeller Road, together with all easements and appurtenances thereto appertaining,

which real estate was then and is now owned by said defendant, for which defendant agreed to pay to plaintiff the sum of Eighteen Thousand Eight Hundred Fourteen Dollars.

2. In pursuance of said agreement, plaintiff thereafter began the installation of said sprinkler system and continued therewith until said building, including said sprinkler system, was completely destroyed by fire of unknown origin on June 16, 1958, at which time such installation was approximately forty per cent (40%) completed.

3. In compliance with said contract, plaintiff furnished all the necessary material and performed all the labor in the installing of said sprinkler system to and including said 16th day of June, 1958, on which last mentioned date plaintiff last furnished material and performed labor pursuant to said contract.

4. Plaintiff has been prevented from completing such installation and from further complying with said contract by the complete destruction of said building as aforesaid, all of which occurred without fault of plaintiff.

5. The portion of said sprinkler system so installed by plaintiff prior to the destruction of said building, as above alleged, was permanently attached to said building by nails, screws, hangers, clips, and other permanently attached devices, and became a part of said building and said real estate immediately upon installation as the work progressed, and said installed portion of said sprinkler system, at the time of its destruction by fire as aforesaid, belonged to and was owned by the defendant as part of the real estate above described.

6. As further indication of the permanence of such installation and its becoming a part of said building and said real estate, said contract included, as a part of said sprinkler system to be constructed in accordance with said contract, the furnishing and laying of a new underground water supply (consisting of pipes, valves and fittings) in and through said real estate to carry water to the sprinkler heads of said system in said building from the public water main in the public street adjoining said real estate. Said underground water supply had not been laid at the time of said fire, but the same was to be constructed and laid so as to become and be a part of said real estate owned by defendant.

7. Prior to July 16, 1958, plaintiff demanded payment from defendant for the completed portion of said contract, but defendant refused and continues to refuse to pay for the same.

8. On the 13th day of August, 1958, and less than sixty (60) days after the performance of said work and the furnishing of said materials, as hereinabove alleged, plaintiff filed in the office of the Recorder of Allen County, Indiana, a notice of its intention to hold a lien on said real estate for the amount of its said claim in the sum of Seven Thousand Dollars ($7,000.00), specifically setting forth the amount claimed and a descrip-

tion of said real estate, a copy of which notice is filed herewith, marked 'Exhibit A', and made a part hereof.

9. The reasonable value of work and labor done and materials furnished, represented by the portion of said sprinkler system installed in and attached to said building and said premises, prior to the time of said fire, is the sum of Seven Thousand Five Hundred Twenty-Five and 60/100 Dollars ($7,525.60), which sum is justly due and owing from defendant to plaintiff, and plaintiff is entitled to interest thereon at the rate of six per cent (6%) per annum from July 16, 1958.

10. Plaintiff has been compelled to employ, and has employed, attorneys to enforce said lien and to bring and prosecute this action, and a reasonable attorney fee for their services is Two Thousand Dollars ($2,000.00).

WHEREFORE, plaintiff asks judgment against defendant for Ten Thousand Dollars ($10,000.00) and the costs of this suit; that plaintiff's lien be foreclosed and that the same be declared superior to any interests of the defendant in and to the above described real estate; that said real estate be sold and the proceeds be applied first to the payment of plaintiff's judgment and the balance as the court may find is just and equitable, and for such other and further relief as may be proper in the premises."

The notice of mechanic's lien attached to the said amended complaint, marked "Exhibit A", is omitted herefrom, since the contents thereof are not deemed to be important for our consideration.

An answer was filed by appellee which alleged:

" 1.

That it admits that in the month of March, 1958, plaintiff and defendant entered into an oral agreement whereby the plaintiff was to furnish the material for and perform the necessary labor for the installation of a fire prevention sprinkler system in this defendant's manufacturing plant

at a price of Eighteen Thousand Eight Hundred Fourteen Dollars ($18,814.00), payable as and when said installation was completed to the satisfaction of this defendant and when said work was acceptable to the Indiana Rating Bureau, as alleged in plaintiff's grammatical paragraph number 1.

2.

Defendant admits that the plaintiff commenced the installation of said sprinkler system and that said work continued until defendant's building was completely destroyed by fire of unknown origin on June 16th, 1958, but denies that said installation was approximately forty per cent (40%) completed at that time as alleged in plaintiff's grammatical paragraph number 2."

The remainder of the answer denied the other material allegations of the complaint.

In addition to a statement of the evidence contained in the majority opinion, I consider it important to include other evidence set forth in the condensed recital of the evidence in appellant's brief, to which appellee has acceded. The record additionally reveals that the work to be done and the material to be furnished was a part of the contract between appellant and appellee; that the over-all plans for the project were approved by the Indiana Rating Bureau on April 25, 1958, prior to the commencement of the performance of the contract. It seems apparent that from and after March 17, 1958, appellant was engaged in drawing plans and specifications and securing the approval of the Indiana Rating Bureau and of appellee for the project, although, as conclusively shown by the letter from appellant to appellee, dated March 5, 1958, set forth below, negotiations for the work began as early as 1957. It seems also apparent that on May 13, 1958, appellant began the fabrication of parts to be installed as part of the

sprinkler system, and on May 17, 1958, actual installation began. The building upon which the work was done and the material furnished by appellant and which became an integral part of the building and freehold owned by appellee, was either totally consumed or ruined by fire of an unknown origin on June 16, 1958, when the installation was from thirty-five (35) to forty (40) percent completed.

On March 11, 1958, appellee executed its purchase order No. 27380, appellee's Exhibit No. 9, calling for "The installation of a sprinkler system per specifications in attached letter dated March 11, 1958 and quoted in your letter March 5, 1958.", which said letter of March 5, 1958, is as follows:

" HIPSKIND FIRE PROTECTION COMPANY
COMPLETE AUTOMATIC SPRINKLER SYSTEMS
AND
FIRE CONTROL APPARATUS
FORT WAYNE 4, INDIANA
March 5, 1958

1725 Winter Street
   Anthony 7139

             (5/9/58 Base        12,394
             Add 80 heads $15
                        $1200

             "   1 tap
             Change 8" tap
             from St. vs

General Industries, Inc.  6" tap from
3033 Wayne Trace     South       2900
Fort Wayne, Indiana               4,100
                            16,500

Attention:  Mr. E. J. Disser
             Vice-President and Comptroller

Gentlemen:

Pursuant to and in compliance with your presumedly final requirement, bearing on the exterior Paint Building, shown located beyond the

northeast corner of your main manufacturing plant; and which, we now understand, you intend to maintain in operation for the present time, our survey of this date, effected through the courtesy of your Mr. Richard Schemehorn, Chief Engineer, discloses that this work shall require a separate dry-pipe antifreeze system of nine (9) sprinklers [sic], same to be an extension from the wet-pipe system of your main plant.

We hereby propose to perform the above-named work for the additional net sum of

THREE HUNDRED SIXTY-TWO DOLLARS ........
$362.00

Our total proposals, to date, embrace:

1. Basic Proposal, dated December 9, 1957
$16,514.00

2. Alternate Proposal dated February 28, 1957
627.00

3. Alternate Proposal, dated March 5, 1958
362.00

Proposed Total Contract $17,503.00

(O'R - - - phrasing
    for P.O.        Respectfully submitted,

Saving - - Ann.
    Prem.)    HIPSKIND FIRE PROTECTION
                           COMPANY

                (Signed)
LMN:ak      Lou M. Nagelsen, Manager
(General Industries    Mar. 6, 1958)"

Attached to said purchase order, appellee's Exhibit No. 9, is appellee's Exhibit No. 10, as following:

"          GENERAL HOMES
    Division of General Industries, Inc.

                     Fort Wayne, Indiana
                     March 11, 1958

Mr. Lou M. Nagelsen, Manager
Hipskind Fire Protection Company
1725 Winter Street
Fort Wayne, Indiana

Dear Mr. Nagelsen:

This letter contains the specifications for our purchase order #27380.

## ADDITIONAL CONDITIONS OF CONTRACT

1. The automatic sprinkler system must be installed to conform to regulations of the National Board of Fire.Underwriters and devices listed by the Underwriters' Laboratories must be used.

2. Before work is begun, complete working plans of installation must be submitted to the Indiana Rating Bureau for approval.

3. Upon approval of plans by the Indiana Rating Bureau, the installation must be carried out accordingly. No deviation from approved plans will be permitted unless first approved by the Indiana Rating Bureau.

4. It is a condition of this contract that the installation of the automatic sprinkler system will not be accepted or paid for until the installing company shall furnish a written statement to the effect that the work covered by its contract has been completed and tested in accordance with the approved specifications and plans. It is a further condition that the completed work must be completely acceptable, in every detail, to the Indiana Rating Bureau.

## INSURANCE PROVISIONS

1. Public Liability and Property Damage

The Contractor shall, at his own expense, effect and maintain comprehensive $100,000/$3000,00 Public Liability and $50,000/$50,000 Property Damage Insurance, including Contractors Protective, and Comprehensive Auto $100,000/$300,000 Liability and $50,000 Property Damage. Ten day written cancellation notice to the Owner shall be provided. Prior to starting work, certificate of such insurance shall be delivered to the Owner. The Contractor shall not permit any Subcontractor to commence work on his subcontract until said Subcontractor has obtained similar insurance.

## 2. Compensation and Occupational Disease

Prior to starting work, the Contractor shall provide the Owner with a certificate showing Compensation and Occupational Disease coverage in the name of the Contractor, as required by the laws of the state in which the work is to be performed. Ten days' cancellation notice to the Owner shall be provided. The Contractor shall not permit any Subcontractor to commence work on his subcontract until such insurance required by the Subcontractor has been obtained.

3. The Contractor shall be responsible for, and shall indemnify and hold harmless the Owner against any and all expenses, claims, demands, suits, and proceedings arising out of any injury to or death of any persons (including without limitation employees of the Contractor, the Owner, and Subcontractor, other Contractors or any other person, as well as the public) and any damage to any property (including without limitation any work or materials of the Owner, any Subcontractor, other contractors or any other person, as well as the public and owners of property adjacent to the building site) caused by any act or neglect. of the Contractor, or any of his Subcontractors or the agents or employees of either.

4. If any legal proceedings shall be brought against the Owner on account of any injury to person or to the property described herein, the Owner shall give notice thereof to the Contractor who shall, at his own expense, defend such proceedings, pay to satisfy any judgment that may be entered against the Owner in any such proceedings and pay all costs or expenses whatever incurred by the Owner in any such case in which judgment is rendered against him.

GENERAL HOMES
Div. of General Industries, Inc.

(/s/) Bruce H. McLennan

Bruce H. McLennan
BMcL/dl          Purchasing Agent      "

We have not found anything in the record which discloses that appellant accepted the conditions set forth in Exhibit No. 9 and Exhibit No. 10. On the other hand, it appears that by defendant's Exhibit No. 8, and particularly that part of same which has to do with a letter from appellant to appellee, dated May 8, 1958, Edward J. Disser, Vice President of appellee, made this notation thereon:

"Dick Schem—" (meaning Schemehorn, Chief Engineer of appellee) "If this will get it going, give Lou" (meaning Lou Nagelsen, Manager, who carried on negotiations for the contract in behalf of appellee) "the word and tell him to send the contract. E.J.D." (Meaning E. J. Disser, Vice President and Comptroller of appellee) "5/9/58"

"Called Hipskind 5/13" (meaning 1958) "told him to go ahead. RS 5/13"

Appellant submitted a form of contract generally referred to as standard form of agreement between contractor and owner (Appellant's Exhibit No. 7) dated May 14, 1958, which, among other things, contained the final total contract price of $17,503.00, this by way of amendment, and for progress payments, "on or about the 10th day of each month, to the extent of ninety (90%) percent of the value based on the contractor's prices of labor and materials incorporated in the work, and of materials suitably stored at the site thereof, up to the first day of that month, as estimated by the contractor, less the aggregate of previous payment; and upon substantial completion of the entire work, a sum sufficient to increase the total payments to —% of the contract price. . . . "

Article 5 of said agreement provided as follows:

"Article 5. Acceptance and Final Payment— Final payment shall be due 15 days after substantial completion of the work provided the work

be then fully completed and the contract fully performed.

Upon receipt of written notice that the work is ready for final inspection and acceptance, the Indiana Rating Bureau shall promptly make such inspection, and when they find the work acceptable under the Contract and the Contract fully performed they shall promptly issue a final certificate, over their own signature, stating that the work provided for in this Contract has been completed and is accepted by them under the terms and conditions thereof, and therefore the entire balance shall be due the Contractor.

Before issuance of final certificate the Contractor shall submit evidence satisfactory to the Owner that all payrolls, material bills, and other indebtedness connected with the work have been paid.

If after the work has been substantially completed, full completion thereof is materially delayed through no fault of the Contractor, and the Contractor so certifies, the Owner shall, upon certificate of the Indiana Rating Bureau, and without terminating the Contract, make payment of the balance due for that portion of the work fully completed and accepted. Such payment shall be made under the terms and conditions governing final payment, except that it shall not constitute a waiver of claims."

The record reveals that appellee did not execute the form of contract submitted to it by appellant, and that by the notation of appellee on appellant's letter of March 5, 1958, as above set forth, appellant was told to proceed with the work; and by undisputed oral testimony at the trial by Richard Schemehorn, Chief Engineer of appellee, that he called Hipskind and orally told him to go ahead.

It follows, therefore, that neither appellant's Exhibit No. 7, as modified by its Exhibit No. 8, nor appellee's Exhibit No. 9, as modified by Exhibit No. 10, was for-

mally accepted by either of the other parties. The fact that Hipskind testified that work was started on the project after receipt of the above mentioned purchase order does not, in our opinion, properly lead to a conclusion that appellant accepted the provisions thereof. We think the only proper conclusion is that from the standpoint of time, work was begun after that. This statement is fortified by appellee's objection to admission of its Exhibits 9 and 10 into the evidence "on the grounds that the same has no bearing on this case, is immaterial and irrelevant and tends neither to prove nor disprove any issue in the case, and . . . there is no showing whatever that any of the terms and conditions included therein were accepted or agreed upon by the plaintiff." (Appellant.)

The query then arises: What is the contract situation between the parties to this appeal?

It seems to us from the record that appellant has made a prima facie case in reference to the allegations of its complaint; contrariwise, appellee has not shown any defense thereto, and particularly is this true when we consider the affirmative allegations of appellee's answer. We find nothing in the record which leads to a legitimate conclusion or inference that appellant, as appellee charges, was to furnish the material for and perform the necessary labor for the installation of a fire prevention sprinkler system " . . . payable as and when said installation was completed to the satisfaction of this defendant and when said work was acceptable to the Indiana Rating Bureau, as alleged in plaintiff's grammatical paragraph No. 1.", and we would suggest that said rhetorical paragraph number one does not allege that the contract price would be payable "as and when said installation was completed to the satisfaction of

this defendant and when said work was acceptable to the Indiana Rating Bureau."

There has not been revealed to us any evidence or any legitimate inference to be drawn from any evidence which in any wise would support or lend credence to the contention or assertion that appellant was not to be paid for the installation of the sprinkler system in appellee's building until and unless the installation was finally completed, inspected and approved by Indiana Rating Bureau.

It must be remembered that the plans and specifications, according to the undisputed record, prior to the commencement of the performance of the contract, had already been approved by the Indiana Rating Bureau and, after complete installation, the only prerequisite to approval of the project was testing the system under pressure.

While we are mindful of the excellent and careful attention given to this case at the trial level, both by counsel for the parties and by the trial judge, we likewise are mindful of the opportunity easily to err in respect to the finding of facts in this particular case without the entire written record available for study. We suggest that if the trial judge had found the facts specially and stated his conclusions of law, as seasonably requested by appellant, our task herein would have been simplified, if indeed, not unnecessary.

As stated in the majority opinion, the motion tendered at the conclusion of appellant's evidence had the same effect as a demurrer to the evidence; hence, the sole and only question now before this court is whether such evidence, assumed to be true, or any legitimate inference therefrom, proves, or tends to prove and estab-

lish appellant's case within the framework of the amended complaint.

If we have gleaned from the record and set forth herein a substantially correct statement of the controlling evidentiary facts, it becomes apparent to us at least that we are facing a proposition of law wholly different from the proposition upon which the said motion was predicated and sustained, in pursuance of which judgment was entered.

Appellee relies heavily upon the case of *Krause et al.* v. *Board of Trustees of the School Town of Crothersville* (1904), 162 Ind. 278, 70 N. E. 264. A careful reading of this case leads us to conclude that it has no significant application to the case now before us, for the simple reason that appellant, by its oral contract, did not engage itself to an obligation similar to the obligation of contractor *Krause,* namely, as here, to install a sprinkler system *in toto* according to the plans and specifications approved by appellee and by the Indiana Rating Bureau, *with liability thereafter attaching to pay the contract price therefor.*

The *amended* complaint alleged an *oral contract* and the answer of appellee, in rhetorical paragraph 1 "admits that in the month of March, 1958, plaintiff and defendant entered into an *oral agreement* whereby the plaintiff was to furnish the material, and perform the necessary labor, for the installation of a fire prevention sprinkler system in this defendant's manufacturing plant" at a certain price, "payable as and when said installation was completed to the satisfaction of this defendant and when said work was acceptable to the Indiana Rating Bureau, as alleged in plaintiff's grammatical paragraph 1." (Emphasis supplied.)

The fact is apparent that appellant did not allege in its amended complaint anything regarding the contract price being payable as stated in said answer. And there has not been called to our attention any substantial evidence to support such allegation of facts in said appellee's answer. There is some language on this subject in appellant's Exhibit No. 7 and appellee's Exhibits Numbers 9 and 10, neither one of which, as above stated, was accepted and signed by the other party. Hence, we express the opinion that none of these exhibits removed the contract of the parties from the category of an oral contract to a contract partly by way of parol and partly by way of writing. We express the further opinion that the evidence at the close of appellant's case presented a *prima facie* case and that the motion of appellee should have been overruled.

Appellant also relies heavily upon the case of *Rossville Alc. & Ch. Corp.* v. *Steel Constr. Co.* (1937), 104 Ind. App. 515, 8 N. E. 2d 1016. This case indicates that the storage tanks which were being constructed for installation in a building had not, in fact, been placed in said building and were not attached to the real estate. Furthermore, as in the *Krause* case, even though payments on the contract price in each instance had been made, there was definite provision that the contract price in each instance would not be paid until the work was completed, tested and accepted. The opinion in the *Krause* case and the opinion in the *Rossville* case do not suggest to us an enlargement upon and applicability thereto of the legal principle therein announced. Rather, we express the opinion that their applicability should be limited to that class of cases which by the nature of the contract require an adherence thereto. As we perceive the matter, the scope of applicability is not to be extended and applied except when and wherever ab-

solutely necessary in the enforcement of contract provisions specifically requiring the same. Such is not the case before us.

Both parties to this appeal assert the application to the case at bar of the maxim *res periit domino,* when a thing is lost or destroyed, it is lost to the person who is the owner of it at the time. I agree with this assertion. However, in view of the allegations of the pleadings, the evidence in the majority opinion and that which is set forth herein, and the assertions of the parties, I am of the opinion that the law of fixtures applies to the case at hand. From our investigation, and already having determined that appellant is not shown to have contracted, as claimed by appellee, to deliver *in toto* a completed sprinkler system to be by it approved and to be approved by the Indiana Rating Bureau, we have the opinion that the partly installed sprinkler system was, in its nature, under the classification of a fixture. There was actual annexation; it was adapted to the use of the building on the realty; and would serve the purpose for which it was designed, and there was an evident intention to make the sprinkler system a permanent accession to the freehold. *Citizens Bank of Greenfield* v. *Mergenthaler Linotype Co.* (1940), 216 Ind. 573, 25 N. E. 2d 444. The opinion in that case cited *Ochs* v. *Tilton* (1914), 181 Ind. 81, 85, 103 N. E. 837, as follows:

"'A general rule, recognized by the weight of authority, is that the true test of a fixture requires the united application of the following requisites: (1) annexation of the article, which may be either actual or constructive; (2) adaptation to the use of the realty, or part thereof, with which the article is connected; (3) the party annexing must have intended thereby to make the article a permanent accession to the freehold.'"

We may add that in the *Mergenthaler* case our Supreme Court, in affirming the lower court, decided that there was no intention of the parties to make the linotypes a permanent accession to the realty. However, from the evidence in the case at bar, that part of the sprinkler system already installed through the use of adjustable steel clevice hangers, U-hangers, steel hanger rod clips, coach screw hanger rods, gimlet pointed, threaded and not threaded, pipe cut to dimensions, all following detailed plans and specifications for such installation, designed particularly for appellee's building, approved by appellee and the Indiana Rating Bureau, it seems to us that the removal of the installation not only would make the various and divers parts used in the installation almost completely worthless, but damage to the freehold and building likewise would result from an attempted removal. For these reasons and the further fact that material men and laborers on the job might suffer irreparable injury, harm and damage should a contractor become insolvent or bankrupt during the process of installation, I conclude that this cause should be reversed and remanded for a new trial.

NOTE.—Reported in 194 N. E. 2d 733. Transfer denied in 204 N. E. 2d 339.